Argued and submitted November 4, 2013, decision of Court of Appeals affirmed in part and reversed in part; judgment of circuit court affirmed in part and reversed in part, and case remanded to circuit court for further proceedings June 12, 2014

KEITH KENDON OGLE, SR.,
*Respondent on Review,*

*v.*

Mark NOOTH,
Superintendent,
Snake River Correctional Institution,
*Petitioner on Review.*

(CC 10108394P; CA A148493; SC S061162)

330 P3d 572

Ryan P. Kahn, Assistant Attorney General, DOJ, Salem, argued the case and filed the briefs for the petitioner on review. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

James N. Varner, Portland, argued the case and filed the briefs for the respondent on review.

Kristin A. Carveth, Office of Public Defense Services, Salem, filed the brief for *amicus curiae* Office of Public Defense Services.

Ryan T. O'Connor, O'Connor Weber, Portland, filed the brief for *amicus curiae* Oregon Criminal Defense Lawyer's Association.

Kendra M. Matthews, Ransom Blackman, LLP, Portland, filed the brief for *amicus curiae* American Civil Liberties Union of Oregon, Inc. With her on the brief were Megan E. McVicar and Kevin Diaz.

WALTERS, J.

**WALTERS, J.**

This case requires us to interpret a provision of the Post-Conviction Hearing Act (PCHA), ORS 138.510 to 138.680. ORS 138.580 requires that a petitioner seeking relief under that act attach to the petition "[a]ffidavits, records or other documentary evidence supporting the allegations of the petition * * *." We conclude that that statute requires a petitioner to attach materials, including the petitioner's own averments of fact, that address each element of each asserted ground for relief and that, if presumed true, would permit the post-conviction court to determine that the petitioner was entitled to post-conviction relief on that ground.

In this case, the post-conviction court granted the state's motion to dismiss, concluding that the materials that petitioner had attached to his petition were insufficient to meet the statutory requirement. The trial court entered a judgment of dismissal. Petitioner appealed, and the Court of Appeals reversed. *Ogle v. Nooth*, 254 Or App 665, 672-75, 298 P3d 32 (2013). For the reasons explained below, we conclude that petitioner met the attachment requirement of ORS 138.580 with respect to his first ground for relief but not with respect to his second, third, and fourth grounds for relief. We affirm in part and reverse in part the decision of the Court of Appeals and remand the case to the post-conviction court for further proceedings.

## BACKGROUND

The pertinent facts are primarily procedural. In October 2009, a jury found petitioner guilty of one count of second-degree assault constituting domestic violence, one count of possession of methamphetamine, and two counts of endangering the welfare of a minor. The assault conviction arose from an incident in which petitioner struck the victim and fractured her jaw. The trial court entered a judgment of conviction and sentenced defendant to 76 months in prison and 36 months of post-prison supervision.

On October 18, 2010, petitioner filed a *pro se* petition for post-conviction relief.[1] The post-conviction court appointed

___

[1] When he filed his petition, petitioner was imprisoned in an Oregon Department of Corrections institution. As provided in ORS 138.570, he named the

counsel for petitioner. ORS 138.590(4). On February 18, 2011, petitioner's counsel filed an amended petition for post-conviction relief, in which petitioner alleged that he had been denied effective assistance of counsel in various respects, in violation of Article I, section 11, of the Oregon Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. Specifically, petitioner alleged that his criminal trial counsel had been ineffective in failing to meet with and prepare a witness, Parker, who was present during the incident and was interviewed by the police after petitioner's arrest; in failing adequately to "investigate" the victim's hospital records; in failing to offer the victim's medical records into evidence; and in failing adequately to cross-examine the victim's treatment provider. Petitioner attached to the amended petition the indictment, judgment, and trial transcript from his criminal trial.

Citing ORCP 21 A(8), the state filed a motion to dismiss the petition on two grounds: failure to state a claim, and failure to comply with the attachment requirement of ORS 138.580. In regard to the latter, the state argued that petitioner was required to attach to his petition documentary evidence sufficient to constitute a *prima facie* case on each of his claims of ineffective assistance. Specifically, the state argued that petitioner's first claim required that he attach an affidavit from Parker averring in what way she would have testified differently if trial counsel had met with her. The state also argued that petitioner's second and third claims required that he attach the victim's medical records. Finally, it argued that his fourth claim required that he attach a document setting out the victim's treatment provider's answers to the questions that, according to petitioner, his trial counsel should have asked or, alternatively, an explanation of the steps that petitioner was taking to obtain those answers.

In response to the state's motion, petitioner submitted two additional documents. The first—petitioner's Exhibit 4—was an affidavit in which petitioner averred that, "[i]n

superintendent of the institution as defendant. For convenience, we refer to defendant as "the state."

the police reports," Parker had given a "chronological statement" of the events on which the charges were based and that, if trial counsel had met with her and reviewed that statement, trial counsel could have elicited testimony that supported petitioner's defense of self-defense. In the same affidavit, petitioner also averred that the victim's X-rays and other medical records raised questions about the victim's injuries that would have been beneficial to his defense and again asserted that trial counsel's cross-examination of the victim's treatment provider was ineffective in that regard. Petitioner's second submission—Exhibit 5—was an affidavit relating to his claim that trial counsel had been ineffective in regard to the testimony of Parker. Petitioner averred that the victim's and Parker's statements to the police supported his claim of self-defense; he also set out lists of questions that petitioner thought that his trial counsel should have asked the victim and Parker, respectively, and their hypothetical answers.

The post-conviction court held a hearing on the state's motion to dismiss. At the conclusion of the hearing, the post-conviction court granted the state's motion to dismiss, concluding that petitioner had failed to comply with the attachment requirement of ORS 138.580.

Petitioner appealed. The Court of Appeals reversed and remanded, concluding that petitioner's submissions met the attachment requirement in ORS 138.580. The court first considered the meaning of the phrase "documentary evidence." The court looked to the current plain and legal meanings of the term "evidence" and the fact that a related statute, ORS 138.620(2), sets out procedures for the hearing on a petition and requires submission of "competent evidence"—which, the court noted, is a synonym for "admissible evidence." The court concluded that the legislature did not intend the phrase "documentary evidence" to require a post-conviction petitioner to attach admissible evidence. *Ogle*, 254 Or App at 670-71. The court concluded instead that the phrase "documentary evidence" in ORS 138.580 "means written documents that are submitted to the post-conviction court that tend to prove or disprove the existence of an alleged fact." *Id.* at 671.

The court also considered the meaning of the phrase "supporting the allegations of the petition." *Id.* The court determined that the ordinary meaning of the term "support" is "to serve as verification, corroboration, or substantiation of" and that the legislature's use of that term indicated that a post-conviction petitioner was not required to attach materials conclusively demonstrating, proving, or establishing an allegation. *Id.* (citing to *Webster's Second New Int'l Dictionary* (unabridged ed 1959)). Rather, ORS 138.580 requires that a petitioner attach documentary evidence that "verifies, corroborates, or substantiates the assertions that the petitioner has undertaken to prove." *Id.*

Applying its interpretations to the materials attached to petitioner's petition, the Court of Appeals determined that the materials were sufficient as to each of his four claims of ineffective assistance. Specifically, the court determined that petitioner's affidavit in Exhibit 4 supported his claim that his criminal trial counsel was ineffective by failing to meet with a defense witness before trial by averring that, if counsel had met with the witness, she would have testified about the relevant events in chronological order and thereby aided his defense of self-defense. The court rejected the state's argument that petitioner was required to submit evidence demonstrating that trial counsel did not meet with the witness and an affidavit from the witness explaining how she would have testified differently if counsel had done so. 254 Or App at 673. The court also rejected the state's argument that petitioner was required to submit the victim's actual medical records, concluding that his averments about those records were sufficient to support his second and third claims of ineffective assistance. *Id.* Finally, the court determined that the trial transcript and petitioner's affidavit were sufficient to support his fourth claim, relating to his trial counsel's purported failure adequately to cross-examine the victim's treatment provider. *Id.* at 673-74. The court concluded that, by setting out the factual and legal theories underlying his claims and attaching his affidavits in support of those theories, petitioner had made a sufficient showing for him to be allowed to proceed through the discovery process and to a hearing. *Id.* at 674.

On review in this court, the parties do not dispute whether the attachment requirement of ORS 138.580 is mandatory. The statute uses the word "shall," and, in 1993, the legislature amended the statute to eliminate an exception to the attachment requirement that allowed petitioners to explain why they were unable to attach materials to support their claims. Instead, the parties raise two interpretive questions about the required attachments. The first is the substantive content that the attachments must include. The second is the degree of reliability that the attachments must demonstrate.

As to the first, the state argues that the materials that a petitioner attaches must be sufficiently probative to permit a court to rule in his or her favor as to each of the allegations of the petition. The state refers to that "amount" of evidence as "prima facie" evidence, or sufficient evidence to submit the case to a finder of fact. Petitioner responds that ORS 138.580 does not require a petitioner to attach materials that are sufficient to prove each of his allegations. Petitioner argues that, consistently with the statutory scheme, a petitioner is entitled, after filing his or her petition, to "pursue the discovery process" and proceed to a hearing where he or she may present additional evidence pertaining to the allegations, as provided in ORS 138.620.

As to reliability, the state no longer argues (as it did in the Court of Appeals) that ORS 138.580 requires the attachment of admissible evidence. Instead, it argues, consistently with the text, context, and legislative history of the PCHA, that ORS 138.580 requires a post-conviction petitioner to support the allegations in his or her petition with evidence that is highly "reliable and trustworthy." The state argues that it therefore is insufficient for a petitioner to attach merely his or her own affidavit including "speculative" averments as to criminal trial counsel's actions or the testimony that a witness would have given and the possible effect of those actions or that evidence on the outcome of the trial. Petitioner argues in turn that ORS 138.580 permits the attachment of any affidavit, record or document—including an affidavit from the petitioner stating the facts as the petitioner understands them—that supports the allegations of the petition.

## ANALYSIS

In enacting the PCHA, the 1959 Legislative Assembly "both created a right to post-conviction relief and established a comprehensive set of procedures for resolving post-conviction claims." *Ware v. Hall*, 342 Or 444, 449, 154 P3d 118 (2007). Those procedures remain substantially the same today,[2] and the Court of Appeals succinctly described them as follows:

> "First, a petitioner files a petition. ORS 138.580. Next, the defendant must file a response within 30 days after the docketing of the petition. ORS 138.610. If the petition states a ground for relief—that is, if it is not subject to dismissal as a meritless petition under ORS 138.525—the court holds a hearing. ORS 138.620. At the hearing, the court 'may receive proof by affidavits, depositions, oral testimony or other competent evidence.' ORS 138.620(2)."

*Ogle*, 254 Or App at 675. The Court of Appeals noted that the state was not arguing that the post-conviction court had dismissed petitioner's petition as "meritless" under ORS 138.525(2)—defined in that statute as a petition that, "when liberally construed, fails to state a claim upon which post-conviction relief may be granted." The Court of Appeals explained that, "[i]n all events, the petition here states a claim; it alleges facts that, if true, give rise to a claim for relief" and that, accordingly, petitioner was entitled to appeal the dismissal. 254 Or App at 669 n 1. *See Young v. Hill*, 347 Or 165, 171, 173-74, 218 P3d 125 (2009) (phrasing of ORS 138.525 "echoes ORCP 21 A(8), which authorizes motions to dismiss for failure to state a claim in civil proceedings generally"; also noting that judgment dismissing petition for post-conviction relief as "meritless" under ORS 138.525 is not appealable). ORS 138.525 was enacted by the legislature in 1993. Or Laws 1993, ch 517, § 3. We note that, in contrast to the sanction provided in ORS 138.525 for "meritless" petitions, the PCHA does not expressly provide for any particular sanction or remedy for failure to meet the attachment requirement in ORS 138.580. We address that issue later in this opinion.

---

[2] ORS 138.580 was included in the original enactment of the PCHA in substantially its present form. Or Laws 1959, ch 636, § 8.

ORS 138.580 sets forth the requirements that a petition must meet:

> "The petition shall be certified by the petitioner. Facts within the personal knowledge of the petitioner and the authenticity of all documents and exhibits included in or attached to the petition must be sworn to affirmatively as true and correct. The Supreme Court, by rule, may prescribe the form of the certification. The petition shall identify the proceedings in which petitioner was convicted and any appellate proceedings thereon, give the date of entry of judgment and sentence complained of and identify any previous post-conviction proceedings that the petitioner has undertaken to secure a post-conviction remedy, whether under ORS 138.510 to 138.680 or otherwise, and the disposition thereof. The petition shall set forth specifically the grounds upon which relief is claimed, and shall state clearly the relief desired. All facts within the personal knowledge of the petitioner shall be set forth separately from the other allegations of fact and shall be certified as heretofore provided in this section. *Affidavits, records or other documentary evidence supporting the allegations of the petition shall be attached to the petition.* Argument, citations and discussion of authorities shall be omitted from the petition but may be submitted in a separate memorandum of law."

(Emphasis added.) The italicized sentence is at issue in this case.

In construing that sentence, we seek to determine the intent of the 1959 Legislative Assembly. We begin with the text and context of the provision, which are the best evidence of the legislature's intent. *State v. Gaines,* 346 Or 160, 171, 206 P3d 1042 (2009). We give words of common usage their plain, ordinary meaning. *State v. Briney,* 345 Or 505, 511, 200 P3d 550 (2008). However, when words are used in the context of a legal proceeding such as a post-conviction proceeding, they may be used as legal terms of art, and, if so, we give precedence to their legal meanings. *See Bergerson v. Salem-Keizer School District,* 341 Or 401, 413, 144 P3d 918 (2006) (where words of a statute have acquired a well-defined legal meaning, we apply that legal definition).[3]

---

[3] In this opinion we discuss the legal and ordinary meanings of various statutory terms. Because the PCHA was adopted in 1959, we cite authorities published around that time. However, in subsequent years, the primary definitions

We begin our analysis with the first of the two interpretive issues that we have identified. As noted, the state argues that, to properly "support[] the allegations of the petition" as required by ORS 138.580, the attachments must be such that, if true, would permit a court to rule in the petitioner's favor as to each element of the asserted claim or claims. Petitioner's position, and the position adopted by the Court of Appeals, is that the attachments must provide some "support" for the allegations of the petition as a whole, but need not address each element of the petitioner's claims. For the reasons that follow, on this point, we agree with the state.

ORS 138.580 requires the petitioner to "set forth specifically the grounds upon which relief is claimed." *See Datt v. Hill*, 347 Or 672, 678, 227 P3d 714 (2010) (as used in the PCHA, the term "grounds for relief" refers to types of claims giving rise to post-conviction relief, such as denial of constitutional rights or excessive sentence). The petitioner also must allege facts relating to those claims. *See Black's Law Dictionary* 99 (4th ed 1957) (legal meaning of "allegation" was "[t]he assertion, declaration, or statement of a party to an action, made in a pleading, setting out what [the party] expects to prove"); *Webster's* at 68 (in legal context, allegation was "[a] statement by a party of what [the party] undertakes to prove").

When an asserted ground for relief is that a petitioner's criminal trial or appellate counsel was ineffective in one or more ways, the petitioner must allege, and ultimately must prove, facts showing both that counsel failed to exercise reasonable professional skill and judgment and that the petitioner suffered prejudice as a result. *See Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991) (so stating with respect to the Oregon Constitution); *Strickland v. Washington*, 466 US 668, 695, 104 S Ct 2052, 80 L Ed 2d 674 (1984) (counsel is ineffective under Sixth Amendment if counsel's performance fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's errors, result of proceeding would have been different); *see*

---

of the terms have not changed in a way that would require a different analysis or result in this case.

*generally Montez v. Czerniak*, 355 Or 1, 6-8, 322 P3d 487 (2014) (discussing legal principles and standard of review applicable to claims of ineffective assistance of counsel; noting that standards for determining adequacy of counsel under Oregon Constitution are functionally equivalent to those applicable under United States Constitution).

Because a petitioner must prove both elements of such a claim, both elements must be "support[ed]" by the materials attached pursuant to ORS 138.580. In 1959, the legal meaning of the verb "support" was, in part, "[t]o vindicate, to maintain, to defend, to uphold with aid or countenance." *Black's* at 1609. Its ordinary meaning was, in part, "to take the side or promote the cause of, esp. in a dispute * * *; to back up; as to *support* * * * the defendant in an action; also, to uphold or defend as valid, right, just, etc.; as, * * * to *support* the claims of the defendant." *Webster's* at 2534. Somewhat more rigorously, the verb "support" also meant "[t]o verify; substantiate; as, evidence *supporting* a charge." *Id.* As pertinent to the latter definition, the verb "verify" meant "[t]o prove to be true; to establish the truth of; to confirm, as by comparison with facts; to substantiate, as by reasoning; as, to *verify* an account or statement." *Id.* at 2832. The verb "substantiate" meant "[t]o establish the existence or truth of by proof or competent evidence; to verify; as, to *substantiate* a charge." *Id.* at 2514 (all emphases in original).

In light of those definitions, it appears that the attachments referred to in ORS 138.580 must be relevant to and address each element of each claim that the petitioner undertakes to prove. The only reasonable meaning of the requirement that the petitioner attach materials supporting the "allegations" of the petition is that the materials must support all elements of the asserted claims for relief, rather than merely some of the elements.

The quoted definitions do not, however, conclusively indicate the substantive content that the materials attached under ORS 138.580 must have. As discussed above, the term "support" can mean to aid or take the side of, but it also can mean to establish or verify. Other provisions of the PCHA lend some assistance. ORS 138.620(1) provides

that, after the state responds to a post-conviction petition, "the court shall proceed to a hearing on the issues raised." ORS 138.620(2), which was enacted in 1959 as part of the original PCHA and has not been amended since that time, provides:

> "If the petition states a ground for relief, the court shall decide the issues raised and may receive *proof* by affidavits, depositions, oral testimony or other *competent evidence*. The burden of proof of facts alleged in the petition shall be upon the petitioner to *establish* such facts by a preponderance of the evidence."

(Emphases added.) As used there, the noun "proof" is now and in 1959 also was defined in part as "the establishment of a fact by evidence." *Black's* at 1380; *see also Webster's* at 1982 (defining "proof" in part as "[t]hat degree of cogency, arising from evidence, which convinces the mind of any truth or fact and produces belief; demonstration; also, that which proves or tends to prove; that which induces, or tends to induce, certainty of the judgment; evidence."); *id.* at 874 (defining verb "establish" as "[t]o prove and cause to be accepted as true; as, to *establish* a fact") (emphasis in original). The phrase "competent evidence" is a term of art that is and was defined as "[t]hat which the very nature of the thing to be proven requires, as, the production of a writing where its contents are the subject of inquiry"; it also meant evidence that was "admissible or relevant, as the opposite of 'incompetent.'" *Black's* at 355. By contrast, "incompetent evidence" was defined in part as evidence "which is not admissible under the established rules of evidence." *Id.* at 906.

The difference in terminology is significant. *See State v. Rainoldi*, 351 Or 486, 496-97, 286 P3d 568 (2011) (when the legislature includes a directive or requirement in one statute and omits it in another, the reviewing court infers that the omission was deliberate). In enacting ORS 138.580, the legislature did not use the word "establish" as it did in enacting ORS 138.620(2). Therefore, it seems likely that the legislature did not use the word "support" as a synonym for "establish" or to impose a stringent requirement that the attachments prove the allegations of the petition. It is more likely that the legislature used the word "support"

to mean aid or advance the allegations of the petition. Thus, the substantive content of the attachments must aid or advance the allegations of the petition.

To aid or advance the allegations of the petition, the attachments under ORS 138.580 not only must address the allegations in some way, but that the content of the attachments must be such that, if offered at a hearing in admissible form, and if true, would permit a court to rule for petitioner. We can best explain what we mean with an example. Take a circumstance in which a petitioner alleges that her lawyer rendered ineffective assistance at her criminal trial by failing to call to testify an identified, available, and willing witness who would have provided the petitioner with an alibi on the night of the crime, and the petitioner attaches to the petition an affidavit averring that the identified witness would so testify. At the hearing on the petition, the affidavit of the petitioner would be subject to a hearsay objection and could be inadmissible, but the affidavit nevertheless would support the allegations of the petition: It would include facts that, if proved at the hearing through the testimony of the identified witness, would permit the trial court to rule in the petitioner's favor. The substantive content of the attachment would aid and advance the petitioner's allegations and therefore would satisfy the requirement that it "support" them.

The foregoing analysis does not resolve, however, the second interpretive issue that we have identified—what makes an attachment sufficiently reliable to meet the requirements of ORS 138.580. The state relies on the statute's text, context, and legislative history for its argument that, although attachments need not be admissible in evidence, they must be highly reliable and not speculative.

For its textual argument, the state points to the legislature's description of the types of materials that must be attached to a petition—"[a]ffidavits, records or other documentary evidence." The state argues that each of those types of evidence is evidence that is sworn or official or, in the case of "other documentary evidence," that is "relied on by courts or juries." Accordingly, the state asserts, the legislature intended to require that attachments consist of evidence

that is "highly reliable"—that it be of a type that, viewed objectively, has guarantees of trustworthiness and reliability such that a further evidentiary hearing is warranted.

The legal meaning of the term "affidavit" is and was "[a] written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before an officer having authority to administer such oath." *Black's* at 80. *See also Webster's* at 43 (term "affidavit" means "[a] sworn statement in writing; esp., a declaration in writing, made upon oath before an authorized magistrate or officer"). The legal meaning of the noun "record" is and was "[a] written account of some act, transaction, or instrument, drawn up, under authority of law, by a proper officer, and designed to remain as a memorial or permanent evidence of the matters to which it relates." *Black's* at 1437. *See also Webster's* at 2081 (noun "record" means, in part, "[t]hat which is written or transcribed to perpetuate a knowledge of acts or events"; "[a]n official contemporaneous writing by which the acts of some public body, or public officer, are recorded"; "[t]he official copy of the various legal papers used in a case"). The legal meaning of the phrase "documentary evidence" is and was "[e]vidence supplied by writings and documents of every kind in the widest sense of the term * * * [that is] is furnished by written instruments, inscriptions, documents of all kinds, and also any inanimate objects admissible for the purpose, as distinguished from 'oral' evidence[.]" *Black's* at 568. As pertinent here, the legal meaning of the noun "document" was "[a]n instrument on which is recorded, by means of letters, figures, or marks, matter which may be evidentially used" and includes "writings; * * * photographs and pictures." *Id.* at 568. *See also Webster's* at 763 (defining "document" in part as "[a]n original or official paper relied upon as the basis, proof, or support of anything else;—in its most extended sense, including any writing, book, or other instrument conveying information"). The legal meaning of the noun "evidence" was "[a]ny species of proof, or probative matter, legally presented at the trial of an issue, by the act of the parties and through the medium of witnesses, records, [or] documents, * * * for the purpose of inducing belief in the minds of the court or jury as to their contention." *Black's*

at 656. *See also Webster's* at 886 (defining "evidence" in the context of law as "[t]hat which is legally submitted to a competent tribunal as a means of ascertaining the truth of any alleged matter of fact under investigation before it; means of making proof; medium of proof"; defining "evidential" as "of the nature of, relating to, or affording evidence").

The state contends that those definitions support its argument that the phrase "[a]ffidavits, records or other documentary evidence" necessarily refers to "highly reliable" forms of evidence. That argument carries some weight. Certainly a sworn statement may be more reliable than an unsworn statement, and an official record may be more reliable than other documents. However, under ORS 138.580, attachments also may include "other documentary evidence." Although the definitions of "document" and "evidence" indicate that the attached instruments must be writings or the expressive equivalent thereof, and that they advance the petitioner's position, they do not indicate that the legislature intended to require that the instruments be "highly reliable" or have particular guarantees of trustworthiness or reliability.

We turn, therefore, to context. A statute's context includes other provisions of the same or related statutes, the pre-existing statutory framework within which the statute was enacted, and prior opinions of this court interpreting the relevant statutory wording. *Polacek and Polacek*, 349 Or 278, 284, 243 P3d 1190 (2010). The state first points to context provided by other parts of ORS 138.580, including the requirements that the petition

"shall be certified by the petitioner. Facts within the personal knowledge of the petitioner and the authenticity of all documents and exhibits included in or attached to the petition must be sworn to affirmatively as true and correct. * * * All facts within the personal knowledge of the petitioner shall be set forth separately from the other allegations of fact and shall be certified as heretofore provided in this section."

In the state's view, those parts of ORS 138.580 are significant for two reasons. First, by requiring a petitioner to certify the attached documents as "true and correct," the

legislature demonstrated an intent to require that they be trustworthy and reliable. Second, because a petitioner must separately set forth in the petition the facts within his or her own personal knowledge and must certify them as "true and correct," the legislature necessarily contemplated that the petitioner must attach evidence from reliable sources other than the petitioner.

We are not convinced. Taking the state's second point first, the requirement to which the state refers is a pleading requirement that pertains to declarations made in the petition itself, not to the content of the "[a]ffidavits, records or other documentary evidence" attached to the petition. Also, in some instances, as the state acknowledges, facts that are relevant to demonstrate ineffective assistance of counsel will be facts known to only the petitioner and not susceptible to other documentary proof, such as when a petitioner claims that counsel was ineffective in failing to provide the petitioner with essential information that would have caused the petitioner to make different strategic decisions. *See, e.g., Gable v. State of Oregon*, 353 Or 750, 753, 305 P3d 85 (2013) (post-conviction petitioner alleged that criminal trial counsel was ineffective by failing to inform the petitioner of his right to object, on *ex post facto* grounds, to application to his case of new sentencing provisions). The legislature cannot reasonably have intended to exclude a petitioner's own affidavit from the phrase "[a]ffidavits, records or other documentary evidence."

As to the state's first point, we agree that the requirement that the petitioner certify the attachments as "true and correct" does indicate a legislative concern with reliability. However, the only standard of reliability that that requirement imposes is that the petitioner must certify the accuracy of the attachments. The attachments themselves need not meet a heightened standard of reliability.

We also reject the state's argument that the absence of a statute of limitations in the Uniform Post-Conviction Procedure Act (1957) (UPCPA), on which Oregon's PCHA was modeled in part, demonstrates a legislative intent to require that the attachments be highly reliable or trustworthy.

The problem with the state's argument—that the grant of unlimited time to gather materials before filing a petition indicates an intent to require a heightened degree of reliability—is that, before the petition is filed, the petitioner cannot engage in the discovery that may be necessary to obtain evidence meeting that standard.

Consistently with the Oregon Rules of Civil Procedure, which apply to post-conviction proceedings, *see Stevens v. Czerniak*, 336 Or 392, 400, 84 P3d 140 (2004), the petitioner may take deposition testimony or engage in other forms of discovery only *after* he or she files the petition. *See* ORCP 39 and ORCP 40 (providing for depositions after the service of summons or the appearance of the defendant); ORCP 43 (providing that a party may seek the production and inspection of documents "after commencement of the action"). Similar discovery procedures were applicable in 1959. *Former* ORS 41.615 and related statutes set out procedures for obtaining court orders for the production and inspection of documents and other tangible items, not privileged, constituting or containing evidence relating to matters at issue in a "pending" proceeding (*renumbered as former* ORS 41.616, *repealed by* Or Laws 1979, ch 284, § 199). *Former* ORS 45.151 provided that deposition testimony could be taken after the service of summons in an action or the appearance of the defendant (*repealed by* Or Laws 1979, ch 284, § 199).

Where ORS 138.580 expressly requires a petitioner to attach supporting materials at the time of filing the petition—before the petitioner has had the opportunity to engage in discovery and, indeed, when the petitioner may not yet be represented by counsel—we do not agree that the absence in the model act of a statute of limitations indicated an intent by the Oregon legislature to impose the stringent reliability standard for which the state advocates. That is so notwithstanding the fact that the post-conviction court may permit a petitioner to file an amended petition or, in the court's discretion, allow the petitioner additional time to meet the attachment requirement. Our task is to discern the nature of the materials that must be attached at the time of filing; the fact that other materials may be attached later does not further our analysis.

We turn, then, to the legislative history of ORS 138.580. *See Gaines*, 346 Or at 172. The state argues that certain aspects of the history of the PCHA demonstrate that the 1959 Legislative Assembly intended for the attachment requirement to eliminate unfounded petitions at the start of a case, without the need for an evidentiary hearing, and that the legislature therefore must have intended to require attachment of materials that are more reliable than is a petitioner's "speculative" affidavit.

As noted, the legislative history of the PCHA indicates that the Oregon Legislative Assembly modeled its post-conviction act at least in part on the uniform act. *See* Jack G. Collins and Carl R. Neil, *The Oregon Postconviction-Hearing Act*, 39 Or L Rev 337, 340 (1960) (Oregon legislature based PCHA in part on the UPCPA and intended to "establish a single, uniform postconviction remedy and procedure for all attacks on the validity of criminal judgments when appeal is no longer available"). The prefatory comments to the UPCPA declared that its goal was "to clarify and simplify present procedures through consolidating them into a single action and so to eliminate the confusion of cases that now burden the courts * * *." Uniform Post-Conviction Procedure Act, 9B ULA 351 (1957).

The state argues that the prefatory comments to the UPCPA indicate that the Act was intended in part to relieve overworked courts by eliminating groundless petitions at the pleading stage and that the attachment requirement supported that goal. However, both the uniform act and ORS 138.580 as originally enacted required petitioners to attach documentary evidence or explain why they were not able to do so. Thus, even in cases in which petitioners failed to attach documentary evidence, and regardless of what standard the documents might have been intended to meet, a petitioner was entitled to proceed to a hearing. Accordingly, the original version of the attachment provision does not suggest that it was intended as a vehicle for weeding out purportedly unfounded petitions. Instead, its purpose, perhaps, was to provide a bit of clarity to the "often illiterate and unintelligible" pleadings filed by post-conviction petitioners. *See* Collins and Neil, 39 Or L Rev at 351.

Our analysis does not end there, however, because the legislature amended the PCHA in pertinent ways after its original enactment. In 1989, the legislature eliminated the provision stating that no statute of limitations applied and inserted a statute of limitations of 120 days. Or Laws 1989, ch 1053, § 18. Four years later, in 1993, the legislature (1) lengthened the statute of limitations from 120 days to two years; (2) gave post-conviction courts authority to dismiss "meritless" post-conviction petitions; and (3) eliminated the exception to the attachment requirement that allowed petitioners to explain why they were unable to attach materials to support their claims. Or Law 1993, ch 517, §§ 1, 3, 4. The only indication of the reason for the third change is the testimony of then Assistant Attorney General Brenda Peterson, who stated:

"The other thing the proposed amendments would do would be to amend ORS 138.580 to delete a portion of a sentence at the end of that statute which essentially would provide after amendment that an inmate, a petitioner in a post-conviction case needs to attach affidavits, records or other evidence supporting the allegations of the petition. Period. And they would not have the out that they currently have that they could just explain why they didn't do so."

Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2352, Apr 7, 1993, Tape 70, Side A (statement of AAG Brenda Peterson).

We do not view those amendments as an indication that the legislature sought to hold attachments to greater reliability standards than it previously had imposed. The legislature made the attachment requirement mandatory, but we cannot discern an intent to change its substance. And, if we assume that the legislature continued to be concerned with the burden on overworked trial courts, it seems doubtful that the legislature would require those courts to evaluate attachments at the prehearing stage to determine whether they met a standard of reliability not spelled out by statute and then later evaluate possibly different evidence offered at the hearing to determine its competency. See ORS 138.620(2) (at hearing, court decides issues based on "competent evidence"). The legislature knew how to impose heightened reliability standards, and it did not do so. Nor

did the legislature change ORS 138.620 and its commands that, "[a]fter the response of the defendant to the petition, the court shall proceed to a hearing on the issues raised" and, "[i]f the petition states a ground for relief, the court shall decide the issues raised." The legislature provided for prehearing dismissal of a "meritless petition" but did not define a "meritless petition" in terms of the attachments that it must include. Rather, it defined a "meritless petition" as one that, "when liberally construed, fails to state a claim upon which post-conviction relief may be granted." ORS 138.525. Our review of the legislative history of the 1993 amendments to the PCHA does not convince us that the legislature intended to require that materials attached to petitions under ORS 138.580 meet new standards of reliability that it did not define and that it did not intend to include in the original act.

In summary, in providing that "[a]ffidavits, records or other documentary evidence supporting the allegations of the petition shall be attached to the petition" for post-conviction relief, ORS 138.580 does not require a post-conviction petitioner to attach evidence that meets some particular standard of reliability. And, although a petitioner must attach some evidence supporting each element of each asserted claim for relief, ORS 138.580 does not require that such attachments prove the truth of the petitioner's allegations. Rather, ORS 138.580 requires a petitioner to attach materials, including the petitioner's own averments of fact, that address each element of each asserted ground for relief and that, considered together, and if substantiated at the post-conviction hearing, would permit the post-conviction court to determine that the petitioner was entitled to post-conviction relief on that ground.

## APPLICATION

We turn to whether the materials that petitioner attached to his formal petition were sufficient to meet the attachment requirement of ORS 138.580. As previously described, at the time of filing his first, informal petition for post-conviction relief, petitioner attached the indictment, judgment, and trial transcript from his criminal trial. Later, in response to the state's motion to dismiss his formal

petition, he submitted his affidavits constituting Exhibits 4 and 5. As did the post-conviction court and the Court of Appeals, we treat those documents as having been attached to his petition for the purposes of ORS 138.580.

In the underlying criminal case, petitioner was charged with second-degree assault. Therefore, the state was required to prove that petitioner intentionally or knowingly caused serious physical injury to another. ORS 163.175(1)(a). At his criminal trial, petitioner admitted that he had intentionally punched the victim in the face. His defenses were that he had acted in self defense and that his act had not caused the victim serious physical injury. In his post-conviction petition, petitioner asserted that he was denied effective assistance of criminal trial counsel in four particulars. We therefore consider whether his attached materials were sufficient in regard to both elements of each of those four claims: that trial counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result. *Trujillo*, 312 Or at 435. As we explained in *Stevens v. State*, 322 Or 101, 108, 902 P2d 1137 (1995):

> "There is no single, succinct, clearly defined standard for determining adequacy of counsel. Rather, there merely are guidelines for the courts to use in the determination of each case. The Oregon Constitution does not give a criminal defendant the right to a perfect defense, but it requires that the lawyer do those things reasonably necessary to diligently and conscientiously advance the defense. Thus, while an appellate court usually will not second-guess the tactical decisions of a lawyer in the course of representing a criminal defendant, the exercise of reasonable professional skill and judgment generally requires an investigation that is legally and factually appropriate to the nature and complexity of the case so that the lawyer is equipped to advise and represent the client in an informed manner."

(Internal citations omitted.) We further explained that, even where criminal trial counsel failed to exercise reasonable professional skill and judgment, a post-conviction petitioner is entitled to relief only when counsel's acts or omissions had "a *tendency to affect the result* of the prosecution." *Id.* at 110 (emphasis in original).

Here, petitioner first asserted that his criminal trial counsel was ineffective with regard to his defense of self-defense by failing to meet with and prepare a witness, Parker. He alleged that, if counsel had met with Parker, then Parker "would have understood the importance of testifying to the events of the incident in chronological order, which was necessary to support [p]etitioner's claim of self-defense." *See* ORS 161.209 (with stated exceptions, person is justified in using physical force upon another person for self-defense). Materials attached to the petition that were relevant to that claim included the transcript of petitioner's criminal trial, which set out Parker's testimony on direct and cross-examination, and petitioner's Exhibits 4 and 5.[4]

As disclosed in the trial transcript, the victim testified at petitioner's criminal trial that Parker had arrived at the victim's apartment while the victim and petitioner were arguing; that Parker "went straight to the bathroom"; that Parker was still in the bathroom when petitioner hit the victim; that the victim fell onto a coffee table; and that Parker came out of the bathroom while the victim was lying on the coffee table saying, "He hit me." By contrast, Parker testified at the trial that she and the victim arrived at the victim's apartment together; that petitioner and the victim began arguing; that Parker went into the bathroom; that she was in the bathroom for about eight seconds; that, when she came out of the bathroom, petitioner and the victim were standing at the front door; that the victim said to Parker, "He hit me"; and that Parker then saw the victim hit petitioner in the face "two or three times" with a closed fist. Parker testified that she did not see petitioner hit the victim and that she did not recall telling the police that she had seen him hit her.

In his affidavit constituting Exhibit 4, petitioner averred that, in the police reports relating to the incident for which he had been convicted, Parker

"gave a chronological statement of the events, detailing that she witnessed [the victim] hitting me prior to me hitting

---

[4] As noted, petitioner also attached to his petition the indictment and judgment from his criminal trial. Those materials are not relevant to any of petitioner's four claims of ineffective assistance of counsel, and we do not consider them further.

[the victim]. If my trial counsel had met with Ms. Parker prior to trial, and gone over the police reports with her, she would have [had] her memory refreshed and she would have testified to the events in chronological order. That was important to my claim of self-defense. Because Ms. Parker did not testify in the manner she did to the police, the jury did not believe that this was self-defense."

Exhibit 5 averred that jury members "should have had a copy of the Police Narrative" so that they could compare "the statements given to Salem P.D. and the testimonies given in trial." Petitioner further averred in Exhibit 5 that the copies of the police report "should have had the answers to our question outlined and numbered for them in c[h]ronological order." Exhibit 5 also described certain facts purportedly set out in the police report and set out hypothetical questions that petitioner thought "should have been asked" of Parker and the victim at trial.

We conclude that, taken in their entirety, those materials were sufficient for the purpose of the attachment requirement in ORS 138.580 to support the allegations relating to petitioner's first claim of ineffective assistance. That is, they included information that, if true and offered at the hearing in admissible form,[5] would have permitted the post-conviction court to conclude that petitioner was entitled to post-conviction relief based on criminal trial counsel's performance in regard to Parker's testimony and the resulting prejudice to petitioner's defense of self-defense. The post-conviction court therefore erred in dismissing petitioner's first claim of ineffective assistance without an evidentiary hearing, and we reverse the court's judgment of dismissal in that regard.[6]

Petitioner also asserted that his criminal trial counsel was ineffective as to his defense that he did not cause the victim serious physical injury. Because petitioner's second, third, and fourth claims of ineffective assistance relate to

---

[5] We do not take a position on whether the "Police Narrative" would or would not be admissible at trial.

[6] Petitioner also contends that that the post-conviction court erred in ignoring his statement at the hearing that he had the "police report narrative" in front of him. In light of our disposition of his first claim for relief, we need not consider that contention.

trial counsel's performance in that regard, we consider them together. Petitioner alleged that trial counsel was ineffective in "failing to adequately investigate the victim's hospital records prior to trial," "failing to present evidence to the jury of the victim's medical records," and "failing to cross-examine [Dr. Pederson, the victim's treatment provider] regarding the victim's abscessed tooth." The trial transcript attached to petitioner's petition was relevant to those allegations in that it demonstrated trial counsel's use of, or failure to use, those records in the identified manner and demonstrated that counsel did not cross-examine the victim's treatment provider in the identified manner. Exhibit 4 also was relevant.[7] In his affidavit, petitioner averred that the records showed that,

> "when [the victim] had X-rays taken, she actually had an abscessed tooth and not a fracture. I also do not feel that my trial attorney fully understood the medical records he had in his possession. I believe it was error for him not to use these records more fully.

> "* * * I believe that if [the medical] records had been presented [to the jury], it would have been visual reinforcement for the jury. If they had the medical records, I do not feel that I would have been convicted.

> "* * * [Trial counsel] should have asked the doctor why it took two and a half weeks to discover [the victim's] fracture. He should have asked how the injury could go from a sprain, to an abscessed tooth, then to a fracture. I believe his failure to ask these questions prejudiced my case."

However, considering the trial transcript and Exhibit 4 together, we conclude that they did not sufficiently "support[]" the allegations pertaining to petitioner's second through fourth claims of ineffective assistance within the meaning of ORS 138.580. Petitioner apparently took the position that the medical records demonstrated that the victim originally was diagnosed with a sprained jaw, then an abscessed tooth, and finally with a fractured jaw. Petitioner contended that, if the jury had seen the various

---

[7] As discussed above, petitioner's Exhibit 5 related to petitioner's claim of self-defense; it was not relevant to petitioner's second, third, and fourth claims of ineffective assistance.

medical reports, and if defense counsel had more effectively cross-examined Pederson, who testified that the victim had suffered a fractured jaw, the jury would not have convicted him. The problem for petitioner is that the transcript that he attached to his petition demonstrates that the victim and Pederson acknowledged and explained to the jury the reasons for, and the significance of, the successive diagnoses that petitioner averred would be shown by the medical records. According to that transcript, Pederson testified that, although the radiologist who reviewed the first x-rays of the victim's injury did not perceive the nature of her injuries, those x-rays did in fact show that her jaw was fractured. Pederson also explained that a fracture such as that incurred by the victim is readily susceptible to bacterial infection. In short, Pederson's testimony explained why the victim's medical records originally reflected other diagnoses, including the diagnosis of an abscessed tooth.[8] Admission of the victim's hospital and medical records and further examination of Pederson would not have changed the fact of his eventual diagnosis of the nature and cause of the victim's injuries.

Accordingly, although petitioner averred in his affidavits that, if trial counsel had taken the additional actions identified by him, those actions would have affected the outcome of his trial, other materials that he attached to his petition proved differently. *Cf. Two Two v. Fujitec America, Inc.*, 355 Or 319, 332-33, 325 P3d 707 (2014) (in determining whether the defendant was entitled to summary judgment, court considered the plaintiff's affidavit together with other evidence). Specifically, petitioner's materials, taken as a whole, do not demonstrate either that trial counsel failed to exercise reasonable professional skill and judgment in the manner alleged in petitioner's second, third and fourth claims for relief, or that petitioner was prejudiced by counsel's acts or omissions. Because petitioner's attached materials did not support his second, third, and fourth claims for relief, the post-conviction court did not err in dismissing those claims.

---

[8] Petitioner does not challenge the accuracy of the trial transcript. *See* ORS 138.630 (setting out procedures for "contradiction," in post-conviction proceeding, of the record of the petitioner's criminal trial).

Having concluded that the materials attached to petitioner's petition pursuant to ORS 138.580 were insufficient to meet the attachment requirement of ORS 138.580 as to three out of four of his claims of ineffective assistance of counsel, it remains for this court to determine whether the post-conviction court imposed an authorized remedy—dismissal—for that deficiency. As previously noted, the PCHA does not expressly provide any particular sanction for failure to comply with the attachment requirement in ORS 138.580. This court's discussion of an analogous circumstance in *Ware* is germane to that inquiry, however.

In *Ware*, the post-conviction petitioner's first petition for post-conviction relief was unsuccessful. He later filed a second, successive petition, which the post-conviction court summarily dismissed with prejudice on the same day that it was filed. 342 Or at 446. On review, this court considered three "related but separate" issues: (1) whether ORS 138.550(3), which bars successive petitions "unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition," requires a post-conviction court to hold a hearing before dismissing a successive petition; (2) if ORS 138.550(3) so requires, whether ORS 138.525, pertaining to meritless petitions, creates an exception to that requirement; and (3) whether, if a court dismisses a successive petition without providing notice and an opportunity to be heard, it may dismiss the petition with prejudice. *Id.* at 448.

This court first noted the unequivocal requirement in ORS 138.620 that, after the state responds to the petitioner's petition, "the court shall proceed to a hearing on the issues raised." *Id.* at 449. The court also noted that, under ORS 138.590, even an affidavit filed by a petitioner's counsel, averring that a petition can be neither construed nor amended to state a claim for relief, is not a "ground for denying a petition prior to a hearing on its sufficiency." *Id.* at 450. The court concluded that the post-conviction court therefore erred in dismissing the petition in that case without a hearing unless it did so under ORS 138.525, providing for dismissal of meritless petitions, and that, even in the latter instance, the trial court erred in dismissing the petition

with prejudice unless the petitioner was represented by counsel and had an opportunity to be heard. *Id.* at 449-53.

This court also explained, however, that, consistently with ORS 138.620, the hearing that is required prior to dismissal of a petition need not be an evidentiary hearing "in every case." Rather, ORS 138.620(1) contemplates hearings on responses by the state that raise "solely issues of law." *Ware*, 342 Or at 450 n 4. Thus, the PCHA

"contemplates two different courses for resolving post-conviction petitions. On the one hand, a court may appoint counsel, hold a hearing, and, if appropriate, permit amendments to the petition. *See* ORS 138.590 (authorizing appointments of counsel); ORS 138.610 (permitting amendments); ORS 138.620 (providing for hearings on petitions). Having followed that course, a court may dismiss the petition with prejudice. *See* ORS 138.640 (describing form of judgment). On the other hand, a trial court may dismiss a meritless petition before appointing counsel and without a hearing but only if it dismisses without prejudice—a course that could leave a petitioner free to file another post-conviction petition."

*Id.* at 453. This court remanded the case to the post-conviction court to determine which of the two described courses of action was appropriate in that case.

Here, the post-conviction court appointed counsel for petitioner. The state's response raised an issue of law—the sufficiency of the materials attached to the petition under the attachment portion of ORS 138.580—and sought dismissal of the petition. Petitioner's counsel sought, and was granted, a hearing on the state's motion. The post-conviction court held a hearing, considered the record and the arguments of counsel, decided the legal issue in the state's favor, and dismissed the petition. We therefore conclude that the procedures that the post-conviction court followed were authorized under the PCHA as explicated by this court in *Ware*. *See* ORS 138.620 (providing for hearings on issues raised, including hearings on "solely issues of law," and providing that court shall decide issues raised); *see also Ware*, 342 Or at 453 (having appointed counsel, held a hearing, and, if appropriate, permitted amendments to the petition, post-conviction court may dismiss petition). That does not mean,

however, that dismissal always will be the appropriate remedy when attachments are insufficient under ORS 138.80. When the state challenges the sufficiency of attachments under ORS 138.580, the trial court, in its discretion, may respond by allowing or ordering the petitioner to provide further materials before deciding whether to dismiss those claims. *See* ORS 138.610 (among other authorized actions, post-conviction court "may make appropriate orders as to the amendment of the petition or any other pleading"); *Ware,* 342 Or at 453 (so recognizing). *See also* ORCP 21 D (upon motion of a party or upon court's own initiative, trial court may require pleading to be made definite and certain by amendment); ORCP 54 B(1) (defendant may move for judgment of dismissal for failure to comply with order of trial court).

In this case, the trial court did not err in regard to the procedures it followed, but in regard to one aspect of its substantive legal conclusion. As discussed above, although the trial court correctly concluded that petitioner's attached materials were insufficient under ORS 138.580 in regard to his second, third, and fourth claims of ineffective assistance of counsel, it erred in dismissing his first claim. However, because the materials attached to petitioner's petition were sufficient under ORS 138.580 as to that claim, petitioner was entitled to an evidentiary hearing on his first claim.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.