Submitted November 6, 2015; reversed and remanded as to dismissal of claim alleging failure to adequately investigate, prepare and present petitioner's defense of self-defense, otherwise affirmed May 10, 2017

MARC M. HOLCOMB,
*Petitioner-Appellant,*

*v.*

Jeri TAYLOR,
Superintendent,
Two Rivers Correctional Institution,
*Defendant-Respondent.*

Umatilla County Circuit Court
CV121141; A156455

397 P3d 517

Jed Peterson and O'Connor Weber LLP filed the brief for appellant.

Frederick M. Boss, Deputy Attorney General, Anna M. Joyce, Solicitor General, and Carson L. Whitehead, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge pro tempore.

## FLYNN, J. pro tempore

Petitioner appeals from a judgment dismissing his petition for post-conviction relief (PCR) for failing to satisfy the requirement that "affidavits, records or other documentary evidence supporting the allegations of the petition shall be attached to the petition." *See* ORS 138.580. As the Supreme Court has explained, the requirement means that a petitioner must support the petition for post-conviction relief with materials "that address each element of each asserted ground for relief and that, considered together, and if substantiated at the post-conviction hearing, would permit the post-conviction court to determine that the petitioner was entitled to post-conviction relief" on the alleged ground. *Ogle v. Nooth*, 355 Or 570, 589, 330 P3d 572 (2014).

Petitioner argues that his attachments—his own affidavits and the transcript of petitioner's criminal trial—support his claim, set out in paragraph 9.a.1 of the formal petition, that he was denied his constitutional right to counsel because his trial counsel failed "to adequately investigate, prepare and present Petitioner's claim that he acted in self-defense" when he shot two individuals, killing one of them.[1] The state responds that the attachments fail to support petitioner's claim because the trial transcript refutes petitioner's averments in ways that would preclude petitioner from proving his allegations.[2] We conclude that petitioner's attachments support the existence of facts that, "if substantiated," would permit the post-conviction court to determine that petitioner is entitled to relief on the alleged ground and that nothing in the trial transcript would preclude the post-conviction court from reaching that determination.

---

[1] The petition alleged several other grounds for post-conviction relief, and the court dismissed all claims. On appeal, petitioner advances no argument as to how his attachments supported a ground for relief other than counsels' alleged failure to present a defense of self-defense, and we address the court's ruling only as to that alleged ground for relief. *See State v. Dawson*, 277 Or App 187, 190, 369 P3d 1244, *rev den*, 359 Or 847 (2016) (declining to consider appellant's argument when it was "inadequately developed").

[2] We refer to defendant as "the state" throughout the opinion.

## I. BACKGROUND

The relevant facts are undisputed and mostly procedural in nature. Petitioner was charged in a 29-count indictment that included the murder of one victim and the attempted murder of a second victim. *State v. Holcomb,* 213 Or App 168, 170-71, 159 P3d 1271, *rev den,* 343 Or 224 (2007). In closing remarks to the jury, petitioner's criminal trial counsel argued that the evidence showed that the gun discharged while one victim was "wrestling" with petitioner and the other was "wailing on them" with a flashlight. However, counsel did not assert that petitioner had acted in self-defense or request a jury instruction that would have permitted the jury to acquit petitioner on that basis. The jury found petitioner guilty of murder and of multiple counts of attempted murder, burglary, and unlawful use of a weapon. On appeal, we reversed the judgment of conviction as to three counts.

Petitioner then filed a petition for post-conviction relief, in which he alleged various grounds for relief, including the ground that we consider on appeal—the allegation that petitioner was denied adequate and effective representation of counsel, in violation of the state and federal constitutions, by his counsel's failure "to adequately investigate, prepare and present Petitioner's claim that he acted in self-defense."[3] Petitioner attached to the petition the transcripts from his criminal trial and sentencing hearing.

The state moved for partial summary judgment, contending that petitioner failed to satisfy the attachment requirement of ORS 138.580 because the claims were "without support." As to the self-defense allegations, the state argued that petitioner failed to satisfy the attachment requirement because petitioner identified no evidence or

---

[3] The right to counsel under Article I, section 11, of the Oregon Constitution is referred to as the right to "adequate" assistance of counsel, while the right under the Sixth Amendment to the United States Constitution is referred to as "effective" assistance of counsel. Although the relevant constitutional provisions "are 'worded differently,' they 'embody similar objectives.'" *Green v. Franke,* 357 Or 301, 311, 350 P3d 188 (2015) (quoting *Krummacher v. Gierloff,* 290 Or 867, 871, 627 P2d 458 (1981)).

witnesses who "would have supported a self-defense defense." In response, petitioner submitted two affidavits, in which he averred that he "requested and wanted [his] trial attorneys to represent and present a case based on [his] claim of self-defense"; averred what the factual basis for that claim would have been; and averred that he was found guilty after his attorneys, instead, "put forth a defense that they fashioned over [petitioner's] objections."[4]

In reply, the state expanded the scope of its motion from a motion for partial summary judgment against some of plaintiff's allegations, on the basis that they were unsupported, to a motion for summary judgment as to all of petitioner's claims on the basis that they were "entirely without support and almost certainly can never be reasonably supported."[5] The state argued that petitioner's affidavits failed to support his allegations regarding self-defense because the transcript showed that petitioner's trial counsel had put on the evidence that petitioner described as the basis for asserting the defense of self-defense. The post-conviction court granted the state's motion for summary judgment and dismissed all of petitioner's claims with prejudice.

On appeal, petitioner renews his contention that he provided "evidence supporting the allegations of the petition," at least as to the allegation that his trial counsel failed to "adequately investigate, prepare and present" petitioner's defense that he acted in self-defense. We agree.

---

[4] There appears to be no dispute that the post-conviction court considered petitioner's affidavits in ruling on the sufficiency of his attachments, even though they were not filed with the petition. *See Ogle,* 355 Or at 586, (post-conviction court has discretion to allow the petitioner to amend the petition or to allow additional time to meet the attachment requirement).

[5] Petitioner did not object below and does not argue on appeal that the state could not obtain summary judgment on a claim that it did not challenge in the initial motion. *Cf. Eklof v. Steward,* 360 Or 717, 736, 385 P3d 1074 (2016) (holding that it was improper for Court of Appeals to affirm PCR court's grant of summary judgment on an alternative ground not "raised in the motion" or even argued by the state on appeal). However, the state does not argue on appeal that the scope of the summary judgment motion was expanded beyond petitioner's alleged failure to support his claims as required by ORS 138.580. To the extent that an analytical distinction exists between that ground for summary judgment and the additional ground that the dissent identifies, *see* 285 Or App at 481-83, *Eklof* prevents this court from affirming on the basis of a ground not raised in the motion or argued on appeal.

## II. APPLICABLE LAW

The requirement that a petitioner attach evidence to the petition is part of a list of requirements that a petition for post-conviction relief must meet. ORS 138.580. Those requirements include that "[t]he petition shall set forth specifically the grounds upon which relief is claimed" and that "[a]ffidavits, records or other documentary evidence supporting the allegations of the petition shall be attached to the petition"—the requirement at issue in this appeal. The attached "materials must support all elements of the asserted claims for relief." *Ogle*, 355 Or at 580. Thus, before considering whether petitioner's evidence supported his allegations, we briefly consider the elements of petitioner's claim for relief.

A. *Elements that a Petitioner's Attachments Must Support*

When, as here, a petitioner asserts a claim of inadequate or ineffective assistance of counsel, "the petitioner must allege, and ultimately must prove, facts showing both that counsel failed to exercise reasonable professional skill and judgment and that the petitioner suffered prejudice as a result." *Id.* at 579 (citing *Truillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991) (standard with respect to the Oregon Constitution) and *Strickland v. Washington*, 466 US 668, 695, 104 S Ct 2052, 80 L Ed 2d 674 (1984) (standard with respect to the federal constitution)). Prejudice means that "counsel's acts or omissions had 'a tendency to affect the result of the prosecution.'" *Ogle*, 355 Or at 590 (quoting *Stevens v. State of Oregon*, 322 Or 101, 110, 902 P2d 1137 (1985) (emphasis omitted)). As the court explained in *Ogle*, because "a petitioner must prove both elements of such a claim, both elements must be 'support[ed]' by the materials attached pursuant to ORS 138.580." *Id.* at 580 (brackets in original). Thus, for petitioner to support his claim that he was denied adequate or effective counsel by his attorneys' failure with respect to presenting a claim of self-defense, petitioner was required to attach material to support a determination that his counsel failed to exercise reasonable professional skill and judgment regarding the possible defense of self-defense and that the alleged failure had a tendency to affect the outcome of his prosecution.

B.   Ogle's *Construction of "Supporting" Attachments*

In *Ogle*, the Supreme Court addressed two key aspects of the requirement that attachments "support" the allegations of the petition: how reliable the attached materials must be and what substantive content the attachments must include. 355 Or at 576.

1.   *Reliable attachments can include the petitioner's affidavit.*

With respect to reliability, the court held that the attached evidence need not meet "some particular standard of reliability" and, in particular, may include "the petitioner's own averments of fact." *Id.* at 589. The court rejected the state's argument that the supporting evidence must include more than the petitioner's own "'speculative' averments as to criminal trial counsel's actions or the testimony that a witness would have given and the possible effect of those actions or that evidence on the outcome of the trial." *Id.* at 585.

In reaching that interpretive conclusion, the court emphasized two aspects of the procedural context in which the requirement falls. First, the attachment requirement of ORS 138.580 refers to materials that must be attached at "the time of filing the petition—before the petitioner has had the opportunity to engage in discovery and, indeed, when the petitioner may not yet be represented by counsel." *Id.* at 576.

Second, as originally enacted, ORS 138.580 allowed a petitioner to proceed to a hearing without attaching supporting materials if the petitioner was able to give a reason that he or she could not provide supporting evidence at the time of filing. *Id.* at 587. As the court explained, that ability to proceed in some cases without supporting attachments suggests that the purpose of the attachment requirement was not to provide a "vehicle for weeding out purportedly unfounded petitions," but "perhaps was to provide a bit of clarity to the 'often illiterate and unintelligible' pleadings filed by post-conviction petitioners." *Id.* (quoting Jack G. Collins and Carl R. Neil, *The Oregon Postconviction–Hearing Act,* 39 Or L Rev 337, 351 (1960)). Although the legislature

later amended the statute to make the attachment requirement mandatory, the court could discern no intent to impose a heightened standard of reliability for the attachments. *Id.* at 588. Thus, the evidence that a petitioner attaches to the petition need not meet "some particular standard of reliability." *Id.* at 589.

### 2. *Attachments need not "prove" the allegations.*

With respect to the substantive content of the attachments, the court concluded that "support" means that the materials "must aid or advance the allegations of the petition," but need not be sufficient to "prove the allegations of the petition." *Id.* at 581-82. By way of example, *Ogle* explains, to support an ineffective assistance of counsel claim based on the fact that the petitioner's lawyer failed to call to testify an available, identified, willing alibi witness, a petitioner could attach an affidavit stating that the witness would testify to an alibi for the petitioner on the night of the crime. *Id.* at 582. Although the affidavit, itself, might be inadmissible, it would support the allegations of the petition, because "[i]t would include facts that, if proved at the hearing through the testimony of the identified witness, would permit the trial court to rule in the petitioner's favor." *Id.* As is clear from *Ogle*'s example, it is possible for a petitioner to "support" a claim that counsel was ineffective for failing to take (or taking) a particular action merely with information that counsel acted as alleged and information of how the trial could have proceeded if counsel had acted as the petitioner alleged counsel should have acted.

### 3. *Attachments considered together*

As *Ogle* summarizes, ORS 138.580 requires the petitioner to "attach materials, including the petitioner's own averments of fact, that address each element of each asserted ground for relief and that, considered together, and if substantiated at the post-conviction hearing, would permit the post-conviction court to determine that the petitioner was entitled to post-conviction relief" on the alleged ground. *Id.* at 589. The court's application of that test provides additional guidance for when a petitioner's affidavit, "considered together" with the other materials, will be insufficient to

support an allegation. In particular, that guidance comes from the contrast between the alleged omission that the court determined to be supported by the petitioner's affidavit and the alleged omissions that the court determined to be unsupported given the attached transcript of the criminal trial.

First, the court considered the petitioner's allegation that his trial counsel was ineffective with regard to petitioner's defense of self-defense by failing to meet with and prepare a witness. *Id.* at 591. The petitioner supported that allegation with an affidavit in which he averred that the witness gave a statement to the police saying that she saw the victim hit the petitioner before the petitioner hit the victim and that, if trial counsel had gone over the police reports with the witness prior to trial, "she would have [had] her memory refreshed and she would have testified to the events in chronological order." *Id.* at 591-92 (brackets in *Ogle*). He also attached the transcript of his criminal trial, which showed that the witness, instead, testified that she saw the victim hit the petitioner after the petitioner hit the victim. *Id.* at 591. Finally, the petitioner averred that it "was important to [his] claim of self-defense" that the witness testify to the chronology that she had given to police. *Id.* at 592. Those attachments supported the claim, the court explained, because "they included information that, if true and offered at the hearing in admissible form, would have permitted the post-conviction court to conclude that petitioner was entitled to post-conviction relief based on criminal trial counsel's performance in regard to [the witness's] testimony and the resulting prejudice to petitioner's defense of self-defense." *Id.* (footnote omitted).

The court reached a different conclusion, however, with respect to the petitioner's allegations that "his criminal trial counsel was ineffective as to his defense that he did not cause the victim serious physical injury." *Id.* at 592-93. The factual premise of those allegations was that an initial x-ray of the victim's jaw diagnosed an abscessed tooth, but that, two and a half weeks later, the diagnosis was changed to a jaw fracture. *Id.* at 593. Based on that premise, the petition alleged that counsel performed inadequately in "failing to adequately investigate the victim's hospital records prior to

trial," "failing to present evidence to the jury of the victim's medical records," and "failing to cross-examine [the victim's treatment provider] regarding the victim's abscessed tooth." *Id.* The petitioner attached an affidavit in which he averred that if the jury had seen the medical records, or if his attorney had questioned the doctor about the discrepancy and delay in diagnoses, the jury would not have found that the petitioner caused the victim serious physical injury. *Id.*

The court concluded that the petitioner's averments did not support the claim, because the attached transcript "demonstrate[d] that the victim and [the doctor] acknowledged and explained to the jury the reasons for, and the significance of, the successive diagnoses that petitioner averred would be shown by the medical records." *Id.* at 594. In other words, the post-conviction court did not err in dismissing the petitioner's claims as to his defense that he did not cause the victim serious physical injury, because the court could not have concluded at a hearing that the petitioner was entitled to post-conviction relief based on his criminal trial counsel's failure to make the jury aware of the diagnosis discrepancy or failure to demand on cross-examination that the doctor explain the discrepancy when the transcript showed that the jury *was* aware of the supposed diagnosis discrepancy and that the doctor *was* able to explain the discrepancy. *See Stoeckert v. Nooth*, 269 Or App 335, 340 n 2, 344 P3d 136 (2015) (describing *Ogle* as concluding that the attachments contradicted the petitioner's claims).

## III.  APPLICATION OF *OGLE* TO THIS CASE

That close examination of *Ogle* allows us to resolve the parties' dispute regarding whether petitioner's materials regarding an available claim of self-defense satisfied the supporting-evidence requirement of ORS 138.580, as construed in *Ogle*. Petitioner contends that his supporting materials are sufficient because his affidavits aver facts that, if true, show that petitioner had a viable defense of self-defense to the charges against him, that his attorneys knew that he wanted to rely on that defense, that his attorneys did not present that defense, and that he was ultimately convicted of charges to which that defense could have been asserted. We agree.

As set out above, petitioner's materials included his affidavits. In the first affidavit, petitioner averred that he "personally addressed the trial court and asked that [he] be allowed to defend [himself]" in order to present the claim of self-defense and that he "requested and wanted [his] trial attorneys" to present the defense of self-defense. In his second affidavit, petitioner explained in more detail the evidence that had been identified and presented in support of a viable self-defense claim:

> "Based on the reputation of John and Dean * * * I was hoping to purchase drugs from them at some point. In doing so I revealed that John and Dean * * * were drug dealers to their mother. Dean * * * became upset and attacked me and during the struggle John * * * picked up a flash light and tried to hit me but ended [up] hitting Dean * * * in the face. Dean * * * saw I had a gun and came after me trying to get the gun. During [the] struggle over the gun it went it [*sic*] off and mortally wounded Dean * * *. John * * * then came after me and fearing for my life I shot him."

Those averments constitute "support" for petitioner's claim of ineffective assistance of counsel, as *Ogle* construed that requirement, because the averments, "if true and offered at the hearing in admissible form, would have permitted the post-conviction court to conclude" that petitioner had a viable claim of self-defense that his attorneys failed to present, and to conclude "that petitioner was entitled to post-conviction relief based on criminal trial counsel's performance" in that regard "and the resulting prejudice to petitioner." *See Ogle*, 355 Or at 592.

The state does not specifically dispute that the averments, "if true," permit a determination that petitioner's criminal trial counsel failed to present a viable defense of self-defense. However, the state contends that, when petitioner's averments are compared to the attached record from petitioner's criminal trial, the only conclusion is that petitioner cannot prevail at the post-conviction relief hearing on his claim that his trial counsel were ineffective in failing to pursue a defense of self-defense. Specifically, the state argues that the transcript shows that petitioner's trial counsel presented in closing argument the "exact narrative" that petitioner describes as the "factual basis of the self-defense

claim"; that, because the record shows that petitioner "affirmatively waived" the right to testify in his own defense, it shows that there was no "testimony that trial counsel could have presented to the jury in order to support a claim of self-defense" and that the transcript "directly refutes" petitioner's averment "that he wished to pursue a theory of self-defense."

We do not share the state's view that the transcript precludes petitioner from succeeding on his claim. Based on the guidance supplied by *Ogle*, we conclude that the passages to which the state points in the transcript at most create a basis for a dispute of fact; they would not preclude the post-conviction court from finding petitioner's averments to be true at the post-conviction relief hearing and, on that basis, concluding that petitioner's criminal trial counsel were ineffective in failing to pursue a defense of self-defense.

First, we reject the state's argument that petitioner's trial counsel could not have been ineffective in failing to present a defense of self-defense because counsel presented "that exact narrative," for another purpose, in closing argument. We emphasize that this is not a case in which the transcript precludes petitioner's averment from being proven, such as by demonstrating that trial counsel *did* take precisely the action that petitioner alleges trial counsel failed to take. Petitioner averred that his counsel failed to present the defense that defendant was acting in self-defense when he shot the victims, and the transcript does not show otherwise. Rather, although the transcript shows that petitioner's criminal counsel argued the facts that, petitioner avers, would have supported a defense of self-defense, the transcript also confirms that petitioner's counsel did not argue that those facts permitted the jury to find that petitioner acted in self-defense. It appears that counsel decided to present those facts in an attempt to convince the jury that the shootings were accidental, and the post-conviction court ultimately may determine that petitioner's counsel made a reasonable tactical decision to forgo a defense of self-defense. But that is not the kind of determination that can be made at this stage of the proceedings. At the attachment stage, which can occur before the petitioner has any opportunity for discovery, the question is not whether petitioner

will be able to prove his allegation. *See Ogle,* 355 Or at 586. Petitioner's averments sufficiently support his allegations because "if substantiated at the post-conviction hearing," those averments would permit the post-conviction court to determine that petitioner's trial counsel's failure to present the factual narrative as a claim of self-defense constituted a failure to exercise reasonable professional skill and judgment, and would permit the post-conviction court to determine that the failure to present a self-defense claim tended to affect the result of the trial.

Next, we reject the state's argument that petitioner's waiver of the right to testify means that there was no "testimony that trial counsel could have presented to the jury in order to support a claim of self-defense." Nothing in the record suggests that petitioner would not have testified had an entirely different defense case been pursued and presented. Moreover, nothing in the record suggests that petitioner's self-defense narrative could have been advanced only through petitioner's testimony. Indeed, as the state otherwise highlights, even without petitioner's testimony, petitioner's trial counsel were able to argue a factual narrative that was very similar to the narrative that petitioner avers could have been presented as evidence that defendant committed the charged offenses in self-defense. Thus, nothing about his waiver of the right to testify would preclude the post-conviction court from determining that petitioner's counsel were ineffective in failing to pursue a defense of self-defense. *See Johnson v. Premo,* 277 Or App 225, 241, 370 P3d 553 (2016) (rejecting state's argument that the petitioner's failure to testify at trial demonstrated that he could not have been prejudiced by counsel's failure to advance the petitioner's theory of defense, because counsel could have reasonably advanced that theory of defense without the petitioner's testimony).

Finally, we reject the state's argument that the trial transcript "directly refutes" petitioner's averment "that he wished to pursue a theory of self-defense." In support of its argument, the state emphasizes that the transcript contains "no record of petitioner requesting permission to present a self-defense claim *pro se*" and that the transcript reveals that petitioner agreed with his trial counsel's advice that the court should *not* instruct the jury on the defense of

self-defense. With respect to petitioner's averment that he "personally addressed the trial court and asked that [he] be allowed to defend [himself]" to assert a claim of self-defense, petitioner does not aver that he made that request on the record at the time of trial, *i.e.*, during proceedings recorded by the attached transcript. Thus, the absence of such a request in the trial transcript would not preclude a reasonable factfinder from believing petitioner's averment.

Similarly, petitioner's statement, after both parties had rested their cases, that he agreed at that time to forgo the self-defense jury instruction, does not preclude the post-conviction court from determining that petitioner's counsel failed to exercise reasonable professional skill and judgment before that point in investigating, preparing and presenting a defense of self-defense. Nor would it preclude the post-conviction court from determining that petitioner was prejudiced by that earlier deficient performance. While petitioner's ultimate consent to forgo the jury instruction may be relevant for the factfinder to consider, it is not such an unexplainable discrepancy that a reasonable factfinder would be precluded from determining that petitioner has proven his claim of ineffective assistance.[6]

Moreover, to the extent that the state is suggesting that a petitioner's consent to counsel's theory of defense precludes a determination that counsel failed to "adequately investigate, prepare and present" a different defense, we know of no authority for that proposition. Indeed, our cases make clear that a petitioner's choice to follow a particular trial strategy is "not dispositive" of whether counsel provided effective assistance. *Montez v. Czerniak*, 237 Or App 276, 304, 239 P3d 1023 (2010), *aff'd*, 355 Or 1, 322 P3d 487, *adh'd*

---

[6] Neither the Supreme Court in *Ogle* nor this court in subsequent opinions has addressed whether the petitioner must supplement his or her averments when the state identifies a potential discrepancy between the petitioner's averments and the record of the criminal trial. We need not address that question in this case, because the state's motion for summary judgment raised only a generic challenge to the sufficiency of the petitioner's attachments; the state waited until its answering brief on appeal to contend that petitioner's attachments are insufficient in light of his agreement to forgo the self-defense jury instruction. "In opposing the state's summary judgment motion, petitioner was required to address issues raised in the motion, but *only* those issues." *Eklof*, 360 Or at 736 (emphasis in original).

*to as modified on recons*, 355 Or 598, 330 P3d 595 (2014) (discussing significance of the petitioner's choice to present evidence that he had previously been lodged on death row). We explained in *Montez* that the petitioner could prove that counsel was ineffective if the petitioner's choice regarding the trial strategy "was the result of bad advice" and that, even if the petitioner proposed the strategy, an attorney's duty can "include trying to persuade a client against implementing an ill-advised litigation strategy." *Id.*

The dissent alights on an argument that the state raised below but does not pursue on appeal—that the trial transcript shows a factual scenario in which "the notion of a self-defense defense" is "fantastical." 285 Or App at 493-94 (DeVore, J., dissenting). Even if it were appropriate for this court to affirm the PCR court on a basis that the state does not argue on appeal, the fact-intensive analysis on which the dissent embarks illustrates why the argument is one to be addressed by the PCR court after a hearing. The dissent's analysis crafts an argument for why the PCR court should ultimately determine that a defense of self-defense would have been unsuccessful, and thus that petitioner's trial counsel were not ineffective in failing to investigate and pursue that defense. However, the question at the attachment stage is not whether the petitioner should prevail on his claim for post-conviction relief, but whether the attached information, "if true and offered at the hearing in admissible form, would have *permitted* the PCR court to conclude" that petitioner's trial counsel were ineffective in failing to investigate and pursue self-defense. *See Ogle*, 355 Or at 592 (emphasis added; footnote omitted).

Here, petitioner's affidavits describe a factual scenario significantly different from that to which the trial witnesses testified—a factual scenario that would permit the PCR court to determine that petitioner's trial counsel were ineffective in failing to investigate and pursue a defense of self-defense. When the record that was created at the trial is the product of the defenses that counsel did not investigate and pursue, it is an exercise of circular reasoning to rely on that trial record to determine whether counsel provided effective assistance when they failed to investigate or pursue a defense of self-defense.

Reversed and remanded as to dismissal of claim alleging failure to adequately investigate, prepare and present petitioner's defense of self-defense; otherwise affirmed.

**DeVORE, J.,** dissenting.

A sharp focus reveals that the materials attached to petitioner's petition for post-conviction relief (PCR) do not suffice to "support" the petition as required by ORS 138.580 and instead support the conclusion on summary judgment that a defense of self-defense was unavailable as a matter law. The majority relies on petitioner's own affidavits to posit the prospect of self-defense, but, as the Supreme Court put it in *Ogle v. Nooth*, 355 Or 570, 594, 330 P3d 572 (2014), "other materials that he attached to his petition proved differently." Because application of *Ogle* to contradictory materials is difficult, reasonable minds may conclude differently. Nevertheless, I believe that a focus on the facts and proceedings shows that petitioner's averments do not withstand comparison with the underlying trial record that is attached to the petition. For that reason, I believe the PCR court did not err in dismissing the petition.

## ASSESSING ATTACHMENTS

In relevant part, ORS 138.580 provides that "affidavits, records or other documentary evidence supporting the allegations of the petition shall be attached to the petition." In *Ogle*, the court discerned that "it appears that the attachments referred to in ORS 138.580 must be relevant to and address each element of each claim that petitioner undertakes to prove." 355 Or at 580. On one hand, the statute "does not require a post-conviction petitioner to attach evidence that meets some particular standard of reliability." *Id.* at 589. It suffices if a petitioner's own averments, taken collectively with other attached materials, would permit a PCR court to determine later at a hearing that a petitioner is entitled to post-conviction relief. *Id.* On the other hand, a petitioner's averments by affidavit do not suffice to "support" the allegations of the petition if an attached trial transcript "demonstrates" a conclusion contrary to petitioner's averments. If that happens, the collective materials would not permit a PCR court to determine later that the petitioner is entitled to post-conviction relief. *Id.* at 593-94.

In *Ogle*, the petitioner's claim of ineffective assistance of counsel, among other things, related to the petitioner's defense to an assault charge that he struck the victim and fractured her jaw. *Id.* He disputed that he had caused a serious injury. *Id.* at 592. He alleged that his trial counsel had failed to adequately "investigate" the victim's hospital records, had failed to offer her medical records into evidence, and had failed to adequately cross-examine the victim's doctor. *Id.* at 593. In his affidavit, the petitioner averred that, when x-rays were taken, the victim "actually had an abscessed tooth and not a fracture." *Id.* (internal quotation marks omitted). He averred that trial counsel should have asked the doctor why it took two and a half weeks to go from a seeming sprain, to an abscessed tooth, and then to a fracture. *Id.* His implication was that the delayed diagnosis suggested doubt about the fracture.

The Supreme Court did not accept the petitioner's statements of "fact" at face value. That is, the court did not accept the truth of the statement that the victim had an abscessed tooth, not a fracture. *Id.* at 593-94. Nor did the court abort its review at the suggestion of a factual dispute. There was an undisputed delay in diagnosis, but, even so, the Supreme Court concluded that the petitioner's averments "did not sufficiently 'support'" the allegations of the second, third, and fourth claims of ineffective assistance of counsel. *Id.* at 593. The court recognized that the transcript "demonstrate[d]" that the doctor had explained the successive diagnoses, the radiologist's misreading of the x-rays, and his conclusion that the x-rays showed the fracture. *Id.* at 594. The petitioner's affidavits did not suffice to "support" the PCR petition because other materials dispelled petitioner's critical inference, leaving no support for the claims of inadequate assistance of trial counsel. *Id.* The same conclusion should be reached in this case, although the facts, charges, defense, and proceedings are necessarily a different case.

## POST-CONVICTION PROCEEDINGS

The history of this case is better focused if told in reverse chronological order—from the recent PCR proceedings, through the prior appeal, then the criminal trial, back

to the events in the victims' house in Sweet Home. In that way, we will see which facts matter when we reach them. Suffice to say at the outset, before seeking post-conviction relief, petitioner had been convicted of crimes involving three victims—two brothers, John and Dean, and their mother, Belanger.

Petitioner filed a petition for post-conviction relief, alleging that his counsel in his criminal trial provided inadequate performance that caused him prejudice. In relevant part, petitioner alleged at paragraph 9(a) that his trial counsel had failed to adequately represent him by (1) failing to investigate, prepare, and present a claim of self-defense; (2) failing to investigate and locate a Maglite flashlight allegedly used as a weapon by the second shooting victim, John; and (3) failing to investigate and find witnesses who would have supported the claim of self-defense. Petitioner filed his "Formal Petition for Post-Conviction Relief" with one of several things attached in ostensible support of each element of the claims, as necessitated by ORS 138.580. That thing, which is critical, is the transcript of the trial in petitioner's underlying criminal case. Petitioner had not yet attached or tendered his own affidavits when the state responded.

Initially, the state filed a motion for partial summary judgment against particular allegations or "claims" of inadequate performance. The state's motion urged two separate grounds. Relying on ORS 138.580, the state first contended, as relevant here, that petitioner had failed to attach materials that support his allegations, particularly paragraphs 9(a)(1) and 9(a)(3). Relying on ORCP 47, the state further urged, given what was attached to the petition, that there was no evidentiary support for "a self-defense defense at petitioner's 1999 trial." In other words, the attachments to the petition did not permit a defense of self-defense.[1]

Thereafter, with the court's indulgence, both parties filed additional materials, and the issues were enlarged. Petitioner filed a "response" memorandum, in which he

---

[1] That is so because, if the testimony provided by the trial transcript *permitted* an assertion of self-defense, then the attached transcript *would* support the petition.

"moved" to "dismiss" the state's motion, and he added his first affidavit in support of his petition. After receiving the affidavit and "further review of the record," the state filed a so-called "reply memorandum," in which the state announced, that it "now moves for summary judgment as to **all** claims in the formal petition." (Boldface in original.) The state moved against paragraph 9(a)(2), in addition to the others, and the state specifically argued that the facts contained in the trial transcript demonstrated that petitioner's trial counsel could not have been inadequate when self-defense was not permitted by the facts. The state argued:

> "No facts are added, and no support is supplied for the notion that petitioner had a reasonable chance of putting on a self-defense defense. *A quick review of the trial transcript shows how fantastical is the notion of a self-defense defense in the Sweet Home incident.* In that episode, petitioner entered a home, armed with a handgun. \* \* \* [P]etitioner intended to collect monies he thought were owing to someone else. When he threatened to shoot an elderly woman in the head, *her adult son rushed to her defense* and was fatally shot; his brother was also shot, but survived. \* \* \* Notably, there was and is no disagreement that petitioner went into the home in Sweet Home armed with a handgun. Equally noteworthy, *no ultimate facts are pleaded to explain how petitioner could have had any reasonable basis for claiming self-defense.*
>
> "\* \* \* He further asserts that his attorneys failed to investigate, but *he does not explain how further investigation could possibly have justified petitioner shooting two unarmed men in their own home.* \* \* \* [H]e gives no names [of undiscovered witnesses] and does not offer even a hint of a suggestion as to what the witnesses would have said to support a defense of self-defense."

(Emphases added.) The state added that it would not object if, by the time of the hearing, petitioner submitted the missing support for his allegations, but, as matters stood, the state sought summary judgment "as to all claims" for the reasons urged.

In response, petitioner accepted the invitation to file more. He filed a second personal affidavit. In his first affidavit, he echoed his petition's allegation that, in the

underlying case, he had asked the trial court to allow him to defend himself, "so that [he] could put forth [his] self-defense claim." He averred that he had disagreed over his attorneys' trial strategy and had wanted them to present a case based on his "claim of self-defense." In his second affidavit, petitioner reiterated the point. In addition, he responded to the state's revised motion that expressly challenged the factual basis for the defense. Petitioner averred:

> "Burdick wanted to pick up some of his clothes at the victim's house. John *** invited Mr. Burdick and me into the home. Based on the reputation of John and Dean *** I was hoping to purchase drugs from them at some point. In doing so I revealed that John and Dean *** were drug dealers to their mother. Dean *** became upset and attacked me and during the struggle John *** picked up a flash light and tried to hit me but ended [up] hitting Dean *** in the face. Dean *** saw I had a gun and came after me trying to get the gun. During [the] struggle over the gun it went it [sic] off and mortally wounded Dean ***. John *** then came after me and fearing for my life I shot him. During this altercation I was high on methamphetamines and panicked and ran from the premises[.]"

Unlike witnesses' trial testimony, petitioner's account does not reveal when he pulled or displayed his gun. A careful reading of that account does reveal that, in that statement, petitioner doubled back, retelling twice the part of the encounter that involves the initial shooting victim, Dean. First, petitioner recounts that Dean became upset and attacked, and, second, petitioner recounts that Dean saw that petitioner had a gun and came after petitioner trying to get the gun. Next, petitioner gave a sequence of events: "During [the] struggle over the gun *it went* it [sic] *off* and mortally wounded Dean ***. John *** *then* came after me and fearing for my life I shot him."[2] (Emphases added.)

At a hearing, the court accepted still more exhibits from petitioner. After taking the matter under advisement, the court declared in a decision memorandum that the state was entitled to summary judgment for the reasons that it urged. In an order, the court clarified that the court had

---

[2] That sequence, established in trial testimony to be discussed later, will be important to focusing on which shooting is and which is not at issue on appeal.

accepted the state's document labeled as the "reply" memorandum as a "full motion" or an "inclusive motion for summary judgment." In the ultimate order on summary judgment, the court observed that the state "expanded the scope of the motion for summary judgment in both [its] reply brief and in [its] oral argument on the motion * * *." The court continued, "As litigation developed, [the state's] motion for summary judgment encompassed all of petitioner's claims * * *." Declaring that there were no genuine issues of material fact and that the state's motion was well supported in law, the court granted the motion for summary judgment and dismissed the petition.

The post-conviction proceedings provide the first set of aids to find our focus on the issues. As the PCR court reported, the litigation had developed. Although ORS 138.580 seems to require that "affidavits, records or other documentary evidence supporting * * * the petition shall be *attached* to the petition," petitioner was properly permitted to file a separate affidavit after the state's initial motion and to add support to the petition with a second affidavit and other filings after the state's revised motion. (Emphasis added.); *see Ogle*, 355 Or at 589-92 (treating subsequent filings as attachments in support of the petition). Similarly, the court properly permitted the state to enlarge the scope of its motion to address all petitioner's claims, in both of the two parts of the initial petition—both as to a lack of "supporting" materials under ORS 138.580 and as a matter of law on summary judgment disputing that the factual circumstances would have permitted a defense of self-defense. *See* ORCP 47 C (the court has discretion to modify the ordinary time for filing motions for summary judgment and supporting documents); ORCP 15 D ("The court may, in its discretion, and upon such terms as may be just, * * * allow any other pleading or motion after the time limited by the procedural rules, or by an order [to] enlarge such time."); ORCP 12 B ("The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party."). Thus, by the time of the hearing, the issue was not simply the issue whether the collective materials "supported" the PCR petition under ORS 138.580. That is the limited scope

of the majority opinion in this case. However, given the second ground of the initial motion and the expanded motion for summary judgment, the second issue was whether the circumstances, as shown by the criminal trial transcript, "demonstrated," notwithstanding the averments of petitioner's second affidavit, that self-defense was not a viable defense as a matter of law. If not, then trial counsel could not have been inadequate, nor could petitioner have been prejudiced. *Cf. Ogle*, 355 Or at 594 (trial transcript demonstrated facts such that, if trial counsel had done as petitioner wished, those actions would not have affected the outcome of trial).[3]

## EARLIER APPEAL

Petitioner's prior appeal from his criminal conviction provides the second set of aids, serving to refine our focus by distinguishing those facts that do and do not matter to determination of self-defense as a PCR issue. Petitioner appealed from the judgment of conviction, among other things, for the murder of Dean, attempted murder of John, and unlawful use of a weapon against their mother, Belanger. To understand how the appeal narrows the PCR issues, it is necessary to recap briefly the sequence of events. I borrow, as does petitioner in his brief, from the narrative of events that this court gave in its opinion on the appeal from the criminal judgment:

"In November 1999, [petitioner] and two other men went to the home of Dean and John * * *, [petitioner's] acquaintances. [John and Dean] resided with their mother, Belanger, in Sweet Home, Oregon. Once inside, [petitioner] pulled a gun from his pants and demanded money. [Petitioner] threatened that, if he did not get the money, he would 'blow [Belanger's] head right off the top of her shoulders.' Dean * * * struggled with [petitioner], attempting to steer the gun away from Belanger. During the struggle,

---

[3] A mere reply memorandum would not ordinarily suffice to raise a new issue "by motion." *See Eklof v. Steward*, 360 Or 717, 731, 385 P3d 1074 (2016) (a new argument in a reply memorandum is not a "motion" that suffices to raise an issue for summary judgment). Here, however, the state challenged the lack of evidentiary support as the second part of its initial motion; the state did revise its motion to assail all claims, including a legal challenge to the viability of a claim of self-defense; petitioner twice responded with added materials; and, without objection, the court entertained all issues as they had developed.

[petitioner] shot and killed Dean ***. John *** attempted to come to his brother's aid, but [petitioner] shot and seriously wounded him."

*State v. Holcomb*, 213 Or App 168, 170, 159 P3d 1271, *rev den*, 343 Or 224 (2007) (sixth brackets in original). More detail will be necessary when our focus reaches the viability of self-defense in these circumstances. For now, this abbreviated narrative will suffice for use with subsequent proceedings to distinguish those facts that are and are not material for self-defense as a PCR issue.

In petitioner's appeal, we affirmed the judgment of conviction on some counts, including the murder of Dean and the unlawful use of a weapon against Belanger. We reversed the judgment, among others, as to the conviction of attempted murder of John, due to a constitutional violation in the ensuing police interrogation. 213 Or App at 185-86. When the case was remanded for sentencing on the remaining counts, the eventual judgment of conviction dismissed the attempted murder charge against petitioner concerning John. The charge was not retried.

Dismissal of the charge involving John defeats any prospect that petitioner could be determined to have been prejudiced by trial counsel's purported failure to make more of an issue of the police failure to find and secure the Maglite flashlight as evidence of its threatened or actual use in any struggle (*i.e.*, relating to Formal Petition, Paragraph 9(a)(2)).[4] More importantly, dismissal of the charge involving John defeats any prospect that petitioner could be determined to have been prejudiced in failing to urge a self-defense as against the attempted murder charge involving John (*i.e.*, relating to Formal Petition, Paragraph 9(a)(1), (3) insofar as self-defense pertains to John). Petitioner cannot have been prejudiced by any failure of trial counsel with regard to an attempted murder charge that was ultimately dismissed.

Thus, after the prior appeal, the viability of self-defense as a PCR issue does not involve whatever asserted

[4] The trial transcript reflects, as the state argues, that petitioner's trial counsel *did*, throughout the trial, emphasize the importance of the police failure to find a flashlight that petitioner alleges John used or threatened to use.

threat petitioner avers may have been posed by John. Even by his own account, petitioner shot Dean first. Therefore, the viability of self-defense turns solely on events involving the shooting of Dean and, before that moment, the unlawful use of a weapon against Belanger, John and Dean's mother.

## CRIMINAL TRIAL

A closer look at the facts demonstrates that self-defense was not a viable defense with regard to the murder charge involving Dean. The trial transcript, which petitioner attached in ostensible support of his PCR allegations, provides those facts.[5] Petitioner's conviction on the charge of unlawful use of a weapon against Belanger is helpful in understanding those facts. The weapons count is helpful because petitioner did not challenge his conviction on that count when seeking post-conviction relief. To borrow a word from *Ogle*, that unchallenged conviction "demonstrates" petitioner's conduct preceding his shooting of Dean and precludes a viable prospect of a claim of self-defense.

At trial, Belanger testified that petitioner followed her son John into her home. John sat down. Petitioner pulled out a gun immediately, walked over toward John, and demanded money from him for a "Frances." John denied that he owed any money. According to Belanger, petitioner backed up and told John, "Give me the money or I'm going to blow your mother's head off her shoulders." She recalled that petitioner fired the gun out an open window, saying, "Just to let you know I mean it." Petitioner then walked over and pointed the gun at Belanger who was lying on the couch. She sat up.[6] She was asked and answered:

---

[5] The transcript of the police interviews of petitioner and his companion Burdick were evidence in the criminal trial (respectively, Exhibits 32A and B [petitioner]; Exhibits 107 and 108 [Burdick]). According to the state's closing argument at that trial, Burdick said in his interview that petitioner took out his gun and asked Belanger, "Do you know your son's a drug dealer?" And, in petitioner's interview, he reportedly told police that he fired a couple of shots just to quiet people when they were yelling, and, also, he referred to shooting both John and Dean. Those interviews, however, were not attached to the petition or offered on summary judgment in the PCR proceedings.

[6] Later in her testimony, she elaborated, "Well, he was pointing the gun at me and then fired and I raised my leg like that and it went, I think it went into the couch."

"Q. Then what happened?

"A. Well, Dean raised up from behind me and started over there towards [petitioner], you know, *to protect me, I guess,* you know. And *Dean was trying to push the gun, the gun away from me.*

"Q. Mmm-hmm.

"A. From, from—*so he wouldn't shoot me.*

"* * * * *

"Q. Okay. How did he try to get the, push the gun away from you?

"A. He push his arm like that, *trying to push the gun away from me.* And [petitioner] turned, some way or another, turned the gun around and he shot Dean."

(Emphases added.) Belanger testified that she was trying to get up over the couch to get away. On cross-examination, Belanger repeated:

"A. [Petitioner] put the gun on me.

"Q. He pointed the gun at you again?

"A. Yes. And by that time Dean was raised up.

"Q. Mmm-hmm.

"A. And *he told [petitioner] to put the gun down and leave.*

"Q. Mmm-hmm.

"A. And he started towards, started towards [petitioner].

"Q. Dean did?

"A. Dean did. And he was trying to push his—he got a hold of his arm and *he was trying to push his arm away from shooting me.*

"Q. Uh-huh.

"A. And they got to scuffling and he backed, he pushed Dean into the stove and Dean fell forward.

"Q. Uh-huh.

"A. And, but some way or another [petitioner] turned the gun around and shot Dean."

(Emphases added.) Belanger testified that John got up to intervene "but he never made it." John got near the end of the couch when petitioner saw John coming and shot John in the stomach from a distance of three or four feet.[7]

John's testimony was in accord. He recounted that petitioner "got right into my face the moment he stepped through the door." Petitioner demanded money for a "Frances," but John denied borrowing money. John testified:

"Q. *** What happened then?

"A. He, he says to me, he says, 'If you don't,' he says, 'If you don't give me the $200,' or the amount he was wanting, he says, 'I'll take this pistol and I'll go over there and blow your mother's head right off the top of her shoulders.'"

During the arguing, John said, petitioner fired a shot out the window "to prove how big a person he was." John recalled that petitioner walked over to Belanger and held the gun to her head. John explained that, when petitioner moved "to go back to Belanger and shoot her, that's when [his] brother [Dean] jumped up." John did not recall petitioner asking a question, just prior to Dean getting up, about whether Belanger knew her sons were drug dealers. Dean "challenged [petitioner] for the revolver. And it was a scuffle, you know, with the revolver." They scuffled for no more than 30 to 60 seconds. About that time, the gun was pointed at Dean's stomach, the gun fired, and Dean dropped. John moved towards his brother. Petitioner turned around and shot John, who was about three feet away.

Belanger's grandsons, Davey and Oscar, who were nephews of Dean and John, happened to be visiting their grandmother at the time. They testified at trial. Oscar testified that petitioner fired shots out the window and demanded money from John. Oscar recalled that Dean had gotten up, told petitioner that his gun did not scare him, and that petitioner needed to leave. Oscar remembered that Dean grabbed petitioner by his arm and was going to walk petitioner out toward the door when petitioner resisted. They struggled. Oscar saw the gun turned up in the air toward Dean and heard the gun fire.

---

[7] She said that John did not have anything in his hands.

Petitioner fled from the scene, catching a ride with Moles, from Sweet Home to Lebanon, where petitioner committed a number of offenses against other people, for which he pleaded guilty or was convicted after trial. Moles testified that petitioner told him, "I just smoked two guys."

In closing argument, petitioner's trial counsel argued petitioner's version of the events—that Dean raised up from his chair and grabbed petitioner by the throat, or more likely by the arm and that, in a struggle when the men were too close to see who had the gun, it fired. The argument suggested an accident rather than intentional homicide.

Before instructing the jury, the court engaged in colloquy directly with petitioner about his attorneys' decision not to employ jury instructions on self-defense and the concomitant limitations on the use of deadly force. The transcript, attached to petitioner's PCR petition, reflected the following colloquy between the court and petitioner, who was identified as "defendant," in his criminal trial:

"THE COURT: Okay. There are two other instructions which, again, your attorneys have, for tactical reasons, decided should not be read to the jury. I want to make sure you understand these instructions exist and could be read.

"The first one says, 'The defense of self-defense has been raised. A person is justified in using physical force upon another person to defend themselves from what that person reasonably believes to be the use of, imminent use of unlawful physical force. In defending, a person may only use that degree of force which he reasonably believes to be necessary. The burden of proof is on the State to prove beyond a reasonable doubt that the Defendant did not act in self-defense.'

"And again, your attorneys are advising that not be read. Do you agree or disagree with that?

"THE DEFENDANT: I agree with my attorneys that it shouldn't be read.

"THE COURT: Okay. The second one that goes with that is, 'There are certain limitations on the use of deadly physical force. The defendant is not justified in using

deadly physical force on another person unless he reasonably believed that the other person was committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person. Or committing or attempting to commit a burglary in a dwelling. Or using or about to use unlawful deadly physical force against the Defendant.'

"And again your attorneys—that would go with the first one I read. And do you agree or not agree that that should not be read?

"THE DEFENDANT:   I agree with them also on that one."

When the court did instruct the jury, among the instructions were those pertaining to Count 6 for unlawful use of a weapon, involving intentionally attempting to use a deadly weapon against another person. That count asked whether petitioner intentionally attempted to use a deadly weapon unlawfully against Belanger. The jury found petitioner guilty on Count 2, the charge of murder as to Dean, and the jury found petitioner guilty on Count 6, the charge of unlawful use or threat of use of a firearm as to Belanger.

## SELF-DEFENSE

As in *Ogle*, the trial transcript "demonstrates," notwithstanding petitioner's averment that Dean rose in anger over a question whether Belanger knew her son was a drug dealer, that petitioner had threatened the imminent use of deadly force against Belanger. The transcript indicates that petitioner pulled out and displayed a gun in a room of unarmed people, when there was no evidence that anyone threatened physical, let alone deadly force against him. Petitioner fired the gun out the window, threatened to blow Belanger's head off, and pointed the gun at her. He was convicted for that conduct, and he did not cast doubt on that aspect of his conviction. That is because his affidavits' averments did not provide any factual basis to justify his threat *to Belanger* as self-defense. His averments addressed only shooting John and Dean as self-defense. As a result, petitioner's conviction for unlawful use of a weapon against Belanger establishes, as a matter of law, that petitioner was the initial aggressor in the events that followed.

That conclusion implicates the first of several statutory provisions on self-defense. Significantly, that provision justifies the use of force by Dean, not by petitioner. That statute provides with regard to defense of another person:

> "Except as provided in ORS 161.215 and 161.219, a person is justified in using physical force upon another person for self-defense or to defend a third person from what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose."

ORS 161.209. The transcript confirms that Belanger saw Dean rise in her defense to direct the gun away. Belanger and Oscar testified that Dean told petitioner to leave. A scuffle occurred. To the extent that Dean acted, he was lawfully justified in using ordinary physical force in the defense of Belanger from what he would reasonably believe was the imminent use of unlawful physical force.

Critically, there is no evidence that petitioner withdrew from the encounter and communicated his intent to withdraw. Instead, the struggle continued unabated for 30 to 60 seconds before the gun discharged. The gun fired while pointed at Dean. Those facts did not permit petitioner or his trial counsel to claim self-defense. A second statute, in relevant part, provides a dispositive limitation on the use of ordinary physical force for self-defense:

> "Notwithstanding ORS 161.209, a person is not justified in using physical force upon another person if:
>
> "* * * * *
>
> "(2) The person is the *initial aggressor*, except that the use of physical force upon another person under such circumstances is justifiable if the person withdraws from the encounter and effectively communicates to the other person the intent to do so, but the latter nevertheless continues or threatens to continue the use of unlawful physical force[.]"

ORS 161.215 (emphasis added). Petitioner's claim of self-defense fails, as a matter of law, because he was the initial aggressor and he did not withdraw from the encounter and communicate that to Dean.

Paradoxically, if Dean had gained control of the gun, the situation might pose the question whether Dean could have *lawfully* used deadly force against petitioner for committing or attempting to commit a felony involving the use or threatened imminent use of physical force. *See* ORS 161.219(1) (providing such a justification for use of deadly force). Among others, petitioner's conviction for unlawful use of a weapon against Belanger is a felony, ORS 166.220, and, potentially, that fact could permit Dean's use of petitioner's gun against petitioner. Hence, *petitioner* could not justify use of the gun in self-defense out of fear that Dean, if he gained control of the gun, would use it against him. *See* ORS 161.219(1) (permitting Dean's use of deadly force in resisting physical force involving a felony); ORS 161.219(3) (prohibiting petitioner's use of deadly force unless to resist *unlawful* use of deadly force). That consideration is not in our facts, but I pose that consideration to dispel a twisted misapplication of the statutes to justify petitioner shooting Dean.

The simple fact remains that the handgun was pointed at Dean when it fired. There is no evidence that Dean gained control of the gun, threatened to use the gun against petitioner, or was about to use the gun against petitioner. The only evidence was that Dean had told petitioner to leave the home, had tried to direct the gun away from Belanger, and had tried to force petitioner out of the home. The only conclusions to be drawn from those dispositive facts are that Dean was privileged to use force in defense of Belanger, ORS 161.209; and that petitioner could not assert self-defense when he was the initial aggressor and failed to withdraw and communicate his withdrawal, ORS 161.205.

Oregon cases do not permit a defendant to justify force as self-defense when the defendant did not withdraw. In *State v. Ware*, 26 Or App 675, 677-78, 554 P2d 609 (1976), the defendant claimed that the trial court erred in giving jury instructions on self-defense and its limitations as expressed in ORS 161.209 and ORS 161.215. The state had presented evidence that the defendant initiated an argument with a man, Watson, who carried a large hammer handle in his back pocket. When a second man, Brown,

approached to support Watson, the defendant grabbed the handle and struck Brown with it in the face. As Brown walked away, the defendant threw a beer bottle, striking the back of Brown's head. This court concluded that the facts supported an instruction stating that the initial aggressor cannot justify force as self-defense, absent withdrawal from the conflict created. *Id.* at 278-79.

Oregon's current statutes reflect earlier case law. They "codify the common law of self-defense and [do] not articulate a new standard." *State v. Burns*, 15 Or App 552, 561, 516 P2d 748 (1973). Long ago, the Supreme Court observed:

> "When a man is armed, and seeks another for an affray or an altercation, the law will not permit him to provoke and urge on the difficulty to a point where there is an appearance of an attempt to use weapons, and then justify the aggressor in taking of life simply on the ground of apparent danger. In such case he is the aggressor, and the active cause of the danger which menaces him, and he must abide by that condition of things which his own lawless conduct has produced."

*State v. McCann*, 43 Or 155, 161, 72 P 137 (1903) (internal quotation marks omitted) (while the victim was seated whittling with a pocketknife, the defendant struck the seated victim with his fists, called the victim names, drew out a pistol; when the victim set aside the pocketknife, rose, and reached for the gun, the defendant stepped back and shot the victim in the head; no error in jury instruction; conviction for assault with a deadly weapon affirmed); *see also State v. Hawkins*, 18 Or 476, 484, 23 P 475 (1890), *overruled in part on other grounds by Steve v. Marsh*, 260 Or 416, 440 n 47, 490 P2d 491 (1971) (the defendant "was the aggressor from the beginning of the transaction to the termination of the fatal affray"; the defendant armed himself with a gun, sought his adversary, greeted him rudely, and shot the victim when the victim reached in his pocket; no error in jury instruction; conviction for first-degree murder affirmed).

Such an observation is no less true of this case. Petitioner produced no basis to set-aside his conviction for unlawful use of a weapon against Belanger. That conclusion

established, as a matter of law, that petitioner was the aggressor in those circumstances. He armed himself before entering the victims' home, and, before any threat to him of any kind, he displayed his gun. Regardless whether he did or did not insult Belanger or a son about being a drug dealer, petitioner's averment that Dean "attacked" him is belied by a conviction based on petitioner's threat to shoot Belanger, gunfire out the window to show he was serious, and pointing a 10-millimeter semiautomatic handgun at her head. As a matter of law, the so-called "attack" was a son's defense of his mother. Dean was privileged to demand that petitioner leave and to use physical force to direct the gun away from his mother. *See* ORS 161.209 (defense of another). Because there was no evidence in the trial transcript, nor even any averment in petitioner's affidavits, that petitioner withdrew and communicated that withdrawal to Dean, petitioner, as the initial aggressor, was prohibited from the use of ordinary force in self-defense. *See* ORS 161.215(2) (no justification of self-defense available to initial aggressor, absent withdrawal from conflict).

To the extent that petitioner's affidavit was intended to suggest that the initial shooting—that of Dean—was not intentional and was only an accident during a struggle, the averment was equally ineffective to support a PCR allegation involving failure to raise self-defense. Because a defense of self-defense requires the reasonable belief that force is necessary to defend oneself, an accidental shooting does not provide the circumstances to support a defense of self-defense. *State v. Stalder*, 117 Or App 289, 291, 844 P2d 225 (1992) (rejecting argument that a trial court erred by refusing to give self-defense instruction, because facts did not support giving the instruction).

Thus, after we recognize the significance of dismissal of the charge involving John, the significance of the conviction of unlawful use of the gun against Belanger, and the lawfulness of Dean's defense of his mother, our focus narrows to the unavoidable legal conclusion that self-defense was unavailable to an initial aggressor. *See* ORS 161.215. The state was right when it told the PCR court that "no support is supplied for the notion that petitioner had

a reasonable chance of putting on a self-defense defense." Stressing petitioner's threat "to shoot an elderly woman in the head" and a son who "rushed to her defense," the state aptly concluded that "the trial transcript shows how fantastical is the notion of a self-defense defense in the Sweet Home incident."

## MAJORITY OPINION

The majority opinion suggests that, on appeal, "[t]he state does not specifically dispute that the averments, 'if true,' permit a determination that petitioner's criminal trial counsel failed to present a viable defense of self-defense." 285 Or App at 472. The majority's observation is a comment about something that the state did not actually say, nor concede on appeal. The state, on appeal, did not concede that the factual narrative of petitioner's narrative *was* true, could be true, or that, in light of the trial transcript, presented circumstances that would permit a defense of self-defense. Quite to the contrary, the state argued to the PCR court that the facts, shown in the attachments taken as a whole, did not support a claim of self-defense. The PCR court declared that it granted summary judgment for the reasons that the state urged in the PCR court, and those reasons *did* dispute that petitioner's averments sufficed to satisfy ORS 138.580 or to prevent summary judgment.[8]

The majority "emphasize[s] that this is not a case in which the transcript precludes petitioner's averment from being proven * * *."[9] *Id.* at 473. However, this *is* a case in which the transcript shows, as the state contended below, that the trial transcript did not "support" the allegations and that the defense of self-defense was unavailable on these facts, as a matter of law.

The majority observes that it is premature at the "attachment stage" involving ORS 138.580 to determine

---

[8] On appeal, the state did argue that petitioner's trial counsel gave the same factual narrative that petitioner urged in his second PCR affidavit. I agree with the majority that providing the same factual narrative does not provide the full equivalent of a legal defense of self-defense, because there were no jury instructions on self-defense given.

[9] To the extent that the majority goes on to say that this is not a case in which the transcript shows trial counsel did put on a formal defense of self-defense, I agree.

whether petitioner will be able to prove his allegations. *Id.* at 473-74. However, in this case, despite petitioner's averments, the trial transcript, as well as the unchallenged conviction for unlawful use of a weapon against Belanger, do "prove differently." When the issue is focused, the facts preclude self-defense as a matter of law—both as a failure of supporting material under ORS 138.580 and as a matter of law on summary judgment.

The majority rejects the state's argument that petitioner, having declined to testify, could not have presented a defense of self-defense. *Id.* at 473-74. Here, however, everyone in the home at the time of the incident testified or gave a recorded statement. Both petitioner and his companion Burdick, both who invoked their right not to testify, gave videotaped and transcribed statements to the police, and those statements were admitted into evidence in the criminal trial. Everyone else present in the house testified at trial: Belanger, her two grandsons, and her surviving son John. Petitioner, in support of his petition, offered no other names and made no suggestion what someone might say. As the state contended, petitioner's lack of names or likely testimony *is* exactly what it appears to be—that is, a lack of support for the petition and absence of a basis for self-defense.

Finally, the majority rejects the state's argument that petitioner himself rejected the defense of self-defense when the trial court read those instructions to him and, just to be sure, elicited petitioner's agreement on the record that he himself did not want the jury instructed on self-defense. *Id.* at 474-75. I share the majority's reservations. The problem, however, is not whether the state presented a new issue in a reply memorandum on summary judgment (*i.e.*, without renewing and enlarging the motion). *See Eklof v. Steward*, 360 Or 717, 730-31, 385 P3d 1074 (2016) (where, under ORCP 47, raising an issue by reply memorandum is not the same as raising an issue by "motion" to which the nonmoving party must respond). Nor is this a situation in which an *appellant* raised a new issue for the first time in a reply brief, having failed to properly assign error. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380-81, 823 P2d 956 (1991) (discussing effect of such failure). The state is a respondent who

made a point in an answering brief in support of the PCR court's ruling.

The problem with petitioner's statements to the court is whether the PCR court may be sustained on appeal for a reason that the state may not have brought to the court's attention below. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (explaining the concept and limitations of sustaining a trial court's ruling for a new reason on appeal). The principle of "right for the wrong reason" requires

> "(1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below."

Here, (1) the PCR record (*i.e.*, the trial transcript) is sufficient to support waiver; (2) the PCR court's ruling on self-defense is consistent with an express waiver of self-defense; and (3) the record is materially the same as would have developed if the state had underscored petitioner's statements on the record about self-defense. That is so because, from the outset, the state contended that the petition's attachments, specifically the trial transcript, did not support self-defense. In response to the state's initial motion and revised motion, challenging whether petitioner had supported each element of his claim, *see Ogle*, 355 Or at 580 (construing ORS 138.580), petitioner filed two affidavits in which petitioner addressed the issue that was asserted in paragraph 8 of the petition. By affidavit, petitioner twice addressed what strategy he wanted, averring that he wanted—but his trial counsel refused—to present his theory of self-defense. Having addressed the topic of what strategy he wanted, petitioner cannot be surprised by the topic, nor by proof directly contrary to his averments. His problem is that his own attachment, the trial transcript, contained his rejection of self-defense, and, despite his averments, his own attachment "proved differently." *See Ogle*, 355 Or at 594 (despite affidavits, the trial transcript "proved differently").

In any event, petitioner's overt waiver of self-defense is not necessary to the decision here. It is only an added reason. The issue of self-defense was already foreclosed by the facts or by petitioner's conviction for threatening Belanger. Because self-defense could not have been raised, petitioner's trial counsel could not have been inadequate, and petitioner could not have been prejudiced.

## CONCLUSION

I do not fault the majority for reaching a different conclusion. Application of *Ogle* to "supporting" materials that are contradictory is a task that is nearly impossible when judicial instincts are to regard whatever "support" is necessary under ORS 138.580 as minimal and to deem anything resembling a factual dispute as a matter for trial rather than a matter for summary judgment under ORCP 47. This case, however, is not a typical case. After all that had gone before, what was left for decision on the state's revised motion before the PCR court was a matter of law. I believe that the PCR court got it right. To see that requires a sharp focus on a long record. But, in my opinion, the PCR court did not err in granting the motion and dismissing the petition. Therefore, I respectfully dissent.